**BOYKIN v. HUFF, General Superintendent, District of Columbia Penal Institutions.**

**No. 7667.**

United States Court of Appeals for the District of Columbia.

Decided April 7, 1941.

---

William E. Richardson, of Washington, D. C., for appellant.

Edward M. Curran, U. S. Atty., and George E. McNeil, Dennis McCarthy, and Charles B. Murray, Asst. U. S. Attys., all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and VINSON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The District Court denied appellant's petition for a writ of habeas corpus. He sought release from imprisonment pursuant to a sentence on conviction for violating the pandering act.[1] The petition alleged that appellant had been deprived unconstitutionally of his right of appeal, by action of the trial judge subsequent to the verdict. The present appeal is from the court's denial of the petition, appellant being represented on appeal by counsel appointed by this court.

At the criminal trial and subsequently in the proceedings relating to the motion for a new trial, appellant was represented by two attorneys. One, Parmele, was appointed by the court. The other, Tedrow, volunteered to serve without compensation, and did so with appellant's consent. The motion for new trial was denied and sentence was imposed October 18, 1938. Two days later, and therefore within the period allowed for noting an appeal, the appellant wrote to the trial judge the following letter, which appears in the record as Exhibit A:

> "District Jail,
> "200 19th St., S.E.,
> *"Washington, D. C., October 20, 1938.*
> "Dear Sir: I do not know if I am represented by counsel at this date, as I have not had any communication from Mr. Tedrow since the hearing on the motion for a new trial.
> "So, to safeguard my interests, I wish at this date to notify you of my desire to appeal the decision of the Court, as given September 22, 1938, and to the decision of the Court, as given by Your Honor on October 18, 1938.
> "I am asking Messrs. Parmele and Tedrow to continue acting in my interests, and at this date am asking them to note an appeal for me.
> "Very respectfully,
> "(S) Robert Boykin."

---

[1] D.C.Code (1929) tit. 6, § 181: "Any person who shall receive any money or other valuable thing for or on account of procuring for or placing in a house of prostitution or elsewhere any female for the purpose of causing her illegally to cohabit with any male person or persons shall be guilty of a felony, and upon conviction thereof shall be imprisoned for not less than one nor more than five years. (June 25, 1910, 36 Stat. 833, c. 404, sec. 3.)"

Thereafter ensued a course of correspondence, important parts of which are set forth in the margin.[2] In summary, Exhibit B acknowledged the court's receipt of appellant's letter, notified him that "matters of this sort must be taken care of by counsel" and that the court was forwarding appellant's letter to counsel who had represented him at the trial. This reply was sent two days after the time for noting appeal had expired. Exhibit C was appellant's reply to the court's letter, stating that counsel had withdrawn, though advised of appellant's desire to appeal, and reiterating the request that the court note his appeal, or appoint counsel to do so. Notwithstanding appellant's assertion that counsel had withdrawn, the court responded, in Exhibit D: "While I am willing to confer with your counsel about matters of this sort, you will understand that matters of this character have to be taken care of by counsel rather than by the Court." Thereafter the court notified the two attorneys and the Assistant District Attorney who prosecuted the cause concerning appellant's desire to preserve his rights on appeal and suggested a conference concerning the matter. The conference was had, following which the court wrote to the appellant:

"Dear Sir: I have taken up with Assistant District Attorney McNeil and Messrs. Tedrow and Parmele the matter of the possibility of taking an appeal from the judgement entered against you in the above-entitled case.

"It seems to be the opinion of all the parties concerned that the possibility of ob-

---

[2]     "Exhibit B

"Mr. Robert Boykin,     October 25, 1938.
"*District Jail, Washington, D. C.*

"Dear Sir: I have received your letter of the 20th instant with respect to your desire to appeal the judgement of conviction entered against you in the above-mentioned case. As you doubtless know, matters of this sort must be taken care of by counsel and, accordingly, I am forwarding your letter to Messrs. Tedrow and Parmele, who have served as your counsel, for their consideration.

"Very truly yours,"

"Exhibit C

"P. O. Box 25,
"*Lorton, Va., Oct. 30, 1938.*

"Honorable Sir: Yours of the 25th instant at hand in which you advise me that my appeal of the judgement of conviction must be taken care of by counsel.

"I am in receipt of a letter dated October 26, 1938, wherein Mr. Tedrow withdraws unless he receives a retainer of $200.00. Mr. Tedrow was not appointed to my case by the Court, Mr. Parmele having been selected for that duty. Mr. Tedrow came to me and asked permission to enter my case as associate counsel. I haven't had any communication from Mr. Parmele for nearly two months, despite my efforts to contact him in some manner, so it would appear that I am not represented by counsel at this date, through no fault of my own.

"It would not appear reasonable that I should be satisfied to have my interests neglected in this manner. I advised both Mr. Parmele and Mr. Tedrow of my desire to appeal with the result-ant answer (enclosed), which prompts me to again address Your Honor.

"In denying my motion for a new trial, your Honor granted an exception, and I again assert my desire to take exception to the decision of the Court. Inasmuch as I am without counsel, I cannot see how my right to so notify the Court can be denied, unless counsel is again appointed by the Court, and said counsel can then make my representation, so, I pray your Honor to note my appeal, or appoint counsel to do so for me.

"It has never been my intention to elect to serve any part of sentence imposed upon me until the sentence has been affirmed by the United States Court of Appeals for the District of Columbia, so I feel that I am being illegally detained at this Institution at this time. I shall appreciate very much being removed to the District Jail, pending a hearing on my appeal. Your early consideration is greatly desired.

"Very respectfully,
"(S) Robert Boykin."

"Exhibit D
"November 1, 1938.
"*In re: United States v. Robert Boykin*, Criminal No. 62359.
"Mr. Robert Boykin,
"*P. O. Box 25, Lorton, Virginia.*

"Dear Sir: I have received your letter of the 30th ultimo and enclose herewith copies of letter which I am today writing to Mr. Tedrow and Assistant District Attorney McNeil.

"While I am willing to confer with your counsel about matters of this sort, you will understand that matters of this character have to be taken care of by counsel rather than the Court.

"Very truly yours,"

taining a reversal in your case is remote, inasmuch as counsel, as well as the Court, feel that you were granted a fair trial. Under the circumstances, I do not feel justified in requesting assigned counsel to prosecute an appeal in your behalf. If you desire this should be done, *it will be necessary for you to employ private counsel.*" (Italics supplied.)

Appellant at once responded, in part:

"When I spoke to your Honor of my financial inability to prosecute an appeal, you told me from the bench that counsel for such would be provided for by the Court in such a contingency. There can be no question that such a contingency exists at this date. I can only remind Your Honor of this statement and that *to deny me counsel, or the right to act as my own counsel, is a violation of my constitutional rights as a citizen.*

"I am forced to take issue with your Honor on the second paragraph of the above-mentioned letter in the order of its subjects:

"In regard to the conference with my former attorn*ies*, you mention the opinion of all the parties concerned. Am I to understand that I was not concerned in a subject dealing with the next ten years of my life? It appears to me that such a procedure is highly irregular—that of inviting two attorn*ies* whose only interest in my case is to avoid being given an unprofitable assignment; an Assistant District Attorney who has won a conviction, and would not care to chance a reversal—all invited to confer with the Justice who might easily be of the same opinion as the District Attorney. It would seem just a bit incongruous to have expected any other conclusion to have been reached other than the admission that the possibility of a reversal is remote. I believe that is an admission of a possibility.

*I wish to prosecute an appeal,* inasmuch as there is an admitted possibility, however remote, of a reversal of a decision. I fail to see wherein Your Honor, Mr. McNeil, or Messrs. Tedrow and Parmele have the right to anticipate the United States Court of Appeals for the District of Columbia. There would be no need for a Court of Appeals if it was legal to band together an undesignated body of men for the disposition of such matters.

"*Although Your Honor has not refused me my Constitutional Right of appeal, your subsequent action is tantamount to refusal. Your Honor has said I must appeal through counsel and has refused to appoint counsel.* May I quote, "The Courts of the land are for the rich and poor alike." *I know of no law that precludes a person the right to defend himself, so I must reiterate my previous requests to Your Honor* to note that I appeal the decision of the Court in view of the fact that I have no counsel and am financially unable to employ same.

"Personally, I think I have an excellent possibility of a reversal, and the Court's efforts to prevent a review by the Court of Appeals but serves to strengthen that belief.

"I beg Your Honor's continued indulgence in this matter.
"Very respectfully,"

(Italics supplied.)

The final communication was one from the court to appellant:

"I have given careful consideration to your letter of the 9th instant, as well as previous correspondence which you had with me in reference to your desire to take an appeal in the above-entitled case.

"I do not think there is any obligation on the part of the Court to appoint counsel *to* prosecute an appeal in every criminal case and it is only in cases where the Court or possibly those who are involved in the case might feel the law points involved possibly would be of such character as might require a reversal that the Court would appoint an attorney to prosecute an appeal without compensation and at the expense of the government. Had either of your two attorn*ies,* whom I regard as quite conscientious, in the matter, felt there were substantial points of law involved, I might have been in a pos*t*ition to take some action for you. However, since they nor I feel that you were deprived of any rights, I am constrained to adhere to my position that the Court is not in a position to take further action in the premises *and that if you wish to prosecute an appeal you will have to arrange to secure counsel of your own employment.*" (Italics supplied.)

Appellant appears to have accepted this letter as conclusive and no further steps to perfect or present an appeal were taken. In denying the petition for habeas corpus, the trial court said, in part, in a memorandum opinion: "It seems to me that petitioner was bound by the acts of his counsel during the trial of the case *and with reference to taking an appeal.* I do not think it was incumbent upon the trial court to act

870

as attorney for the petitioner in preparing the necessary papers to perfect an appeal from the judgment, nor to assign other counsel to perfect and prosecute an appeal for him." (Italics supplied.)

On these facts appellant asserts that the court's action deprived him of the right of appeal in propria persona as well as by counsel; that the effect was to do so solely on account of his poverty; and that this constituted an unconstitutional discrimination which renders his conviction, sentence and further detention invalid. It is claimed also that under the indictment and the statute pursuant to which it was returned, appellant was not guilty of the offense charged or of any criminal act, for the reason that the indictment charges only isolated and distinct instances of procuring, while the statute, because it is drawn in terms of cohabitation, requires more than this.

On the other hand, the Government says that the court's action did not in fact or effect deprive appellant of his rights on appeal, but amounted only to an entirely proper refusal to act as counsel or advise appellant as to his course; that the court had discretion under the forma pauperis statute, which it exercised, to deny his request for assigned counsel and to proceed with the appeal as a poor person; that an appeal in forma pauperis is not a matter of absolute or constitutional right, but only of grace or qualified statutory privilege; that an appeal in any event arises only from statutory, not from constitutional, provision, and therefore there can be no denial of constitutional guaranty concerning it; that the indictment charged a crime; and finally, whether it did so or not, the question is one for review on appeal, not by habeas corpus.

### I.

■■ We recognize without reservation that in all it did the trial court had no desire or intention to deprive the appellant of any right to which he was entitled under the Constitution or under the law. The correspondence shows an evident desire to observe the proprieties of judicial office. The court evidently wished to avoid placing itself in the dual position of judge and counsel for the convicted person. In an entirely negative sense, nothing was done, so far as the record shows, which infringed any right appellant may have had. But to some extent, when the fundamental rights of citizens are at stake, more especially when

they are those of indigent persons relating to their lives or personal liberty, there is an affirmative duty which, however undefined in ultimate scope, requires not only that the court not mislead, but that it positively and fully inform the accused concerning his basic rights. This obligation assumes special authority when he is not represented by counsel and is confined in prison and unable to speak for himself except by mail. Nor is it lessened by conceptions of official propriety which, however sincerely entertained, have the effect, though not intended, of foreclosing fundamental rights. These do not give way to an etiquette appropriate for use in other circumstances. Judicial objectivity may be served by keeping hands off when parties are adequately represented. But that is not true when poor persons have no counsel and the effect of inaction is to commit the preservation of their elemental rights to their own ignorance.

### II.

■ The first question is whether the court in effect denied, or prevented appellant from exercising, a right of appeal. We think the answer must be affirmative. Appellant was a layman. He was indigent. He did not know whether or not he had a lawyer, because he was uncertain whether assigned and voluntary counsel would continue to represent him. But he slept on no rights and took no chances. Within time for taking appeal, he notified the court of his uncertainty as to the intentions of his attorneys and, unequivocally, of his desire and purpose to appeal. The notice was not the less effective because coupled with the statement he was asking his former counsel to continue acting for him and to note an appeal. His letter was a safeguard against their failure to do so. The court's reply, nevertheless, told him the matter "must be taken care of by counsel." Probably the court assumed, notwithstanding appellant's uncertainty, that they would continue, or had in mind assigning counsel on appeal if it should find the appeal meritorious. But the reply was sent after time for taking appeal had expired, although the request for the appeal was in time. Nevertheless appellant continued to insist upon his right to an appeal and upon having assistance of counsel. Beginning with his letter of October 30 (Exhibit C), it is clear too that he interpreted the court's communications as meaning that the appeal must be taken by counsel and could not be taken in propria

persona,[3] though it appears also that he did not understand why this should be so. Exhibit C was more than sufficient to apprise the court of appellant's misconception. Nevertheless, its subsequent letters will be searched in vain for any statement which so much as intimates that the impression was wrong. On the contrary, each confirmed it by repeating the original statement.[4] While the language did not state expressly that appellant could not act in propria persona, it was clearly susceptible of that negative inference and there can be no question that appellant drew it. Accepting the inevitable, he took no further steps to perfect or present the appeal. Unless the court was justified in its statements, therefore, its action had the effect of denying an appeal or, what is the same thing, of preventing appellant from taking and perfecting it.

■ As to justification, the Government contends, as we understand, that the court regarded the correspondence as presenting, though informally, an application for leave to appeal in forma pauperis (42 Stat. 666, 28 U.S.C.A. § 832), as well as for assignment of counsel (27 Stat. 252, 28 U.S.C.A. § 835), and therefore regarded its action as merely an exercise of discretion concerning these matters. This view would be consistent with the court's statement (Exhibit E), following the conference with counsel, that it was "the opinion of all parties concerned that the possibility of obtaining a reversal in your case is remote, inasmuch as counsel, as well as the Court, feel that you were granted a fair trial."[5] But, apart from the informality,[6] appellant's letters did not ask for leave to proceed in forma pauperis, except as that might be implied from the statement of his poverty as the reason for requesting assignment of counsel. He made no reference to costs. His request in terms was limited to assignment of counsel. On this the court had discretion under Section 835 to find that the cause was frivolous or malicious, and its action may be considered as a finding that it was the former. But, whether the request be regarded as only for counsel or for that and also for leave to appeal in forma pauperis, and without reference to whether discretion was exercised properly in either respect, the court was under obligation not to go further and mislead the appellant, though unintentionally, concerning his right to appeal in propria persona. It cannot be assumed that he might not have found the necessary funds for costs, and the court's duty was to safeguard the language of its rulings so as to create no misconception which would prejudice other fundamental rights. This it failed to do. The consequence was that the appeal asked for in the letter to the judge never was taken. We are unable therefore to find that the court's

[3] Exhibit C: "Yours of the 25th instant at hand in which you advise me that my appeal * * * *must be* taken care of by counsel. * * * it would appear that I am not represented by counsel at this date, through no fault of my own * * * prompts me to again address Your Honor * * * I again assert my desire to tak*t* exception to the decision of the Court * * * I cannot see how my right to so notify the Court can be denied, unless counsel is again appointed by the Court * * * so, I pray your Honor to note my appeal, or appoint counsel to do so for me." (Italics supplied.)

Exhibit F: "Your Honor has said I must appeal through counsel and has refused to appoint counsel * * * I know of no law that precludes a person the right to defend himself, so I must reiterate my previous requests to your Honor to note that I appeal the decision of the Court in view of the fact that I have no counsel and am financially unable to employ same."

[4] Exhibit E: "If you desire this [prosecution of an appeal] should be done, it will be necessary for you to employ private counsel." Exhibit F (G): "If you wish to prosecute an appeal you will have to arrange to secure counsel of your own employment." Two exhibits were designated "F." The symbol F (G) is used to indicate the second one.

[5] In the court's last letter to appellant [Exhibit F (G)], it said: "It is only in cases where the Court or possibly those who are involved in the case might feel the law points involved *possibly would be of such character as might require a reversal* that the Court would appoint an attorney to prosecute an appeal without compensation *and at the expense of the government*. Had either of your two attornies, whom I regard as quite conscientious, in the matter, felt there were *substantial points of law* involved, I might have been in a pos*t*ition to take some action for you." (Italics supplied.)

[6] Section 832 requires the application to be made under oath and that the court shall certify in writing its opinion that the appeal "is not taken in good faith," if the application is denied.

omission to inform appellant that he could appeal in propria persona was justified.

### III.

■ Clearly therefore the omission either to regard the letter as notice of an appeal or to inform appellant that he could appeal in propria persona was error. But appellant asserts that it amounted to more than that, namely, a denial of constitutional right. On that view he bases his claim to immediate freedom, and it would be entitled to serious consideration if the consequences of the court's mistake could be remedied in no other way. While due process under the Fifth Amendment,[7] as under the Fourteenth,[8] does not require appellate review, nevertheless when Congress creates that right it is not free from all constitutional restrictions, including the obligation not to make unreasonable discriminations.[9]

■ The assumption has been widespread that Congress has absolute power to grant or withhold appeals in forma pauperis.[10] No doubt there is wide latitude for determining how far the Government may be required to bear the costs of civil litigation. It may be assumed also that there is room for some discretion concerning the costs of defense in criminal matters. But when the life or the liberty of the citizen is at stake on a serious criminal charge, and appeals are given as a matter of right to those who are able to pay for them, it may be doubted (though as to this we express no opinion) whether they can be withheld from indigent persons solely on the ground of their poverty or otherwise than so as to give them substantially equal protection with more fortunate citizens. The right of appeal, though statutory, is not insubstantial,[11] and its statutory origin does not make it a matter of such small consequence that it may be given or withheld arbitrarily.

■■ But it is not necessary to determine whether adequate provision has been made in existing statutes[12] for appeals in such cases by indigent persons or to decide whether the court's omission amounted to a breach of constitutional right. Though that may have been true, appellant is not entitled to release at this time, if the wrong yet may be righted in some other way. He has been convicted of crime upon evidence which is not before us and in proceedings as to which no error has been shown[13] except in relation to his right of appeal. If that right may now be given to him, it may

---

[7] Cf. Cobbledick v. United States, 1940, 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783, referring for the history of federal criminal appeal to United States v. Sanges, 1892, 144 U.S. 310, 319–322, 12 S.Ct. 609, 36 L.Ed. 445; Applebaum v. United States, 7 Cir., 1921, 274 F. 43; Haywood v. United States, 7 Cir., 1920, 268 F. 795, 798, certiorari denied, 1921, 256 U.S. 689, 41 S.Ct. 449, 65 L.Ed. 1172.

[8] Frank v. Mangum, 1915, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; McKane v. Durston, 1894, 153 U.S. 684, 687, 14 S.Ct. 913, 38 L.Ed. 867; Smith v. Bastin, 1921, 192 Ky. 164, 232 S.W. 415.

[9] In Frank v. Mangum, 1915, 237 U.S. 309, 327, 35 S.Ct. 582, 587, 59 L.Ed. 969, the Court recognized that due process does not require the state to provide for an appeal, but added: " * * * it is perfectly obvious that where such an appeal is provided for, and the prisoner has had the benefit of it, the proceedings in the appellate tribunal are to be regarded as a part of the process of the law under which he is held in custody by the state, and to be considered in determining any question" of due process. Cf. United States ex rel. Henson v. Mills, D.C.E.D. Pa.1937, 21 F.Supp. 616.

That a state statute which, in the particular circumstances, did not afford an adequate opportunity for taking an appeal generally available, resulted by virtue of its application to those conditions in an unconstitutional discrimination, see State v. Guerringer, 1915, 265 Mo. 408, 178 S.W. 65.

[10] Cf. De Maurez v. Swope, 9 Cir., 1939, 104 F.2d 758, and authorities cited.

[11] As is shown by the volume of reversals in criminal cases. During the fiscal year ending June 30, 1940, reversals took place in twenty-four per cent of all criminal cases in which appeals were taken to the United States Circuit Courts of Appeals and this court. Annual Report of the Director of the Administrative Office of the United States Courts (1940) 59.

[12] 28 U.S.C.A. §§ 832, 835. It may be noted that Congress has not posited the right of appeal exclusively on financial condition, prescribing in addition to this that leave to proceed in forma pauperis shall be based upon good faith in taking the appeal as determined by the trial court and assignment of counsel upon its judgment that the cause is not frivolous or malicious.

[13] The contention that the indictment charged no crime is discussed in the text below.

turn out that his conviction was entirely proper, and if so he will not have been prejudiced by the court's error. The writ of habeas corpus should not be used as a substitute for an appeal,[14] and if that remains available, the mere fact that it has been delayed, even by the length of time which has elapsed in this case, would not justify relief so drastic as giving full freedom to one who on the appeal may be found to have been properly convicted, sentenced and imprisoned.

## IV.

■ We think the appeal may yet be prosecuted. In the circumstances of this case appellant's letter (Exhibit A) may be regarded as sufficient to constitute taking the appeal. What we have said above is, we believe, sufficient to sustain this view, but we state our reasons explicitly. The letter was filed in time. It was clear cut in its demand that the appeal be taken. That was true though it also expressed hope that counsel would take the appeal formally. The letter was a safeguard against their anticipated failure to do so. That it did not contain all of the details specified in Rule III, Criminal Appeals Rules, 18 U.S.C.A. following section 688, 1934, 292 U.S. 661, 662, 54 S.Ct. xxxviii,[15] is not material. It set forth the essential things, namely, the identity of the cause and of the appellant and the intention to appeal. Neither the prosecuting officers nor the court could have been misled or prejudiced by any of the omissions.

■ Nor was it fatal that the letter was filed with the judge rather than with the clerk.[16] The latter is merely an arm of the court and in the circumstances of this case filing with the court rather than with its agent was a substantial compliance with the rule.

■ Nor was the filing ineffective, in these circumstances, because appellant did not tender the five-dollar filing fee as required by the statute and the rules. Upon receiving the letter the court should also have informed the appellant that if he wished to appeal in his own person, this fee should be paid to the clerk. Instead it made no reply until time for taking the appeal had expired and it was too late for appellant to act. Despite his impoverished condition, it cannot be assumed that he might not have raised so modest a sum, had he known it was necessary. Nor was the effect of the court's failure in this respect nullified or justified by the fact that it, apparently, regarded the letter as an application for leave to appeal in forma pauperis.

■ In our view, therefore, the appeal should be considered as having been taken in time. Consequently the jurisdiction of this court attached to the cause. Nor do we think it has been lost by the failure to perfect the record and present the appeal. The trial court's action prevented appellant, as well as itself and its officials, from taking steps to this end in accordance with the usual procedure under the rules. The initiative in many of these matters, especially in those relating to preparation of the record, is placed upon the judge or the clerk of the trial court. Under Rule VII it is made the duty of the trial judge to "at once direct the appellant or his attorney, and the United States Attorney, to appear before him" and to "give such directions as may be appropriate with respect to the preparation of the record on appeal * * *." This, of course, was not done. The only rule which specifies a particular time limit is that part of Rule IX which requires that a bill of exceptions be settled and filed within thirty days after taking of the appeal or such further time as within that period may be fixed by the court. But neither this nor any other requirement subsequent to taking the appeal can be regarded as jurisdictional in the light of Forte v. United States, 1937, 302 U.S. 220, 223, 224, 58 S.Ct. 180, 182, 82 L.Ed. 209. It is there held that from the time of taking the appeal the Court of Appeals has "complete supervision and control of the proceedings on the appeal," including pro-

---

[14] Ex parte Watkins, 1830, 3 Pet. 193, 7 L.Ed. 650; Ex parte Parks, 1876, 93 U.S. 18, 23 L.Ed. 787; In re Coy, 1888, 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274; Knewel v. Egan, 1925, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036.

[15] The rules require that the notice be filed with the clerk in duplicate and that a copy be served upon the United States Attorney. The contents of the notice also are prescribed, including the title of the case, the names and addresses of the appellant and his attorney, a general statement of the nature of the offense, the date of judgment, the sentence imposed, a statement that the defendant appeals from the judgment and of the grounds of appeal.

[16] Cf. Aaron v. Farrow, 1925, 113 Okl. 27, 238 P. 202.

ceedings relating to preparation of the record and power, under Rule IV, to vacate or modify any order made by the trial judge concerning prosecution of the appeal, including one fixing the time for settlement and filing of a bill of exceptions. Within the broad authority there held to be vested in us, we think the circumstances of the present case are sufficient to require us, on application by the appellant, to order that the record be prepared and presented for our consideration. Since appellant's remedy by appeal remains open, the interests of justice would not be served by his discharge at the present time.[17]

Appellant argues that he is entitled to be discharged from imprisonment because, he says, the indictment charged no crime. That question is one for determination on appeal, when one is available.[18] Since we have held that the appeal in the criminal cause is pending, we do not undertake to pass upon the question at this time.

In accordance with what has been said, the appellant will be at liberty to proceed with the perfection and presentation of his record on appeal in the criminal cause, in his own person or by counsel of his own selection as he may be advised.

For this reason, the judgment is affirmed.

---

[17] Cf. Tod v. Waldman, 1924, 266 U.S. 113, 45 S.Ct. 85, 69 L.Ed. 195; Mahler v. Eby, 1924, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549; United States ex rel. Murphy v. Warden of Clinton Prison, D.C.N.D.N.Y.1939, 29 F.Supp. 486, affirmed, 2 Cir., 1940, 108 F.2d 861, certiorari denied, 1940, 309 U.S. 661, 60 S.Ct. 583, 84 L.Ed. 1009.

[18] Ex parte Watkins, 1830, 3 Pet. 193, 7 L.Ed. 650; Ex parte Parks, 1876, 93 U.S. 18, 23 L.Ed. 787; In re Coy, 1888, 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274; Pierce v. Creecy, 1908, 210 U.S. 387, 28 S.Ct. 714, 52 L.Ed. 1113; Knewel v. Egan, 1925, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036.