Connell ROBINSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17946.

United States Court of Appeals.
District of Columbia Circuit.

Argued Oct. 7, 1963.

Decided Feb. 27, 1964.

Bazelon, Chief Judge, dissented.

Mr. Mervyn I. Aronoff, Washington, D. C., with whom Messrs. Irving B. Yochelson and C. Richard Beyda, Washington, D. C. (all appointed by this court), were on the brief, for appellant.

Mr. Anthony A. Lapham, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant seeks to have this court construe his petition to modify or vacate a sentence, under 28 U.S.C. § 2255, as a direct appeal from a judgment of conviction entered February 10, 1953. He urges this be done either under Fed.R.Crim.P. 45(b) (2) because of "excusable neglect," or under Fed.R.Crim.P. 39(a) as an extraordinary exercise of our supervisory power over appeals. The primary ground for urging this exceptional relief is that the prosecutor read to the jury substantively prejudicial parts of an impeachment statement which parts had not in fact been admitted in evidence.

Appellant was indicted for second degree murder arising out of an alleged attack by appellant on the decedent, age 65, in the latter's home at about 2:00 a. m. on August 9, 1952. Appellant, who was then 27 years old, admitted an altercation and subsequent fight but claimed self-defense. The prosecution's evidence showed that appellant, who was a stranger to the decedent, entered the latter's home at a late hour with two companions without invitation, promptly began an argument which led to a struggle in which the decedent sustained a dozen or more deep knife wounds from which he shortly died. One of appellant's companions said he had not seen any knives in the fight and from this the jury could have inferred that the decedent had no knife. A cab driver, who picked up appellant and his nephew as passengers shortly after the affray, testified that appellant was bleeding and had explained that "a knife had closed up on his hand"; that he heard appellant say "I tried to kill that bastard"; that appellant refused to be taken to the hospital and

warned the driver in substance to forget what he had seen.

Appellant's testimony contradicted essentially all of this and claimed that the decedent, without provocation, had attacked appellant wielding a knife one foot long; that he had only retaliated in self-defense with a small pocket knife. Appellant claimed multiple cuts were sustained by him but the doctor who treated him could recall only one cut on the thumb, which he stitched up shortly after appellant's arrest. We have carefully reviewed the entire transcript of the trial and find that appellant's own testimony and that of his nephew-companion was of such character that a jury would have been warranted in discrediting all of their testimony as unreliable. For example, the testimony of appellant and his nephew concerning the nature of the conversation in the taxicab immediately after the incident was significantly contrary to the testimony of the cab driver, a neutral witness. In addition, a statement which according to police testimony was signed by appellant and taken from him at approximately 5:00 a. m. on the morning of the killing was admitted into evidence and used as a basis for vigorous cross-examination of appellant; this statement reveals certain answers by appellant which completely contradict his testimony at trial in at least three important respects.[1]

Appellant was represented by paid counsel at his trial; an appeal was filed but abandoned by appellant's counsel as presenting no reversible error. Appellant thereafter sought without success to perfect his own appeal and mailed numerous letters and various papers to this court between 1953 and May 11, 1954, when the appeal was dismissed after an order to show cause contra had been served on appellant.

In 1956, appellant filed a petition under Section 2255 to vacate or reduce the sentence of 5 to 20 years. Counsel was appointed by the court, and on March 1, 1957, appellant's appointed counsel moved to dismiss the petition for the reason that appellant desired to press an application for parole.[2]

Appellant relies primarily upon Belton v. United States, 104 U.S.App.D.C. 81, 259 F.2d 811 (1958), Christoffel v. United States, 88 U.S.App.D.C. 1, 4, 190 F.2d 585, 588 (1951), and Blunt v. United States, 100 U.S.App.D.C. 266, 244 F.2d 355 (1957). Each of these cases is distinguishable in at least one very crucial aspect from the instant case in that as to each this court had jurisdiction by virtue of a pending direct appeal; that is not true here. In Belton, this court, sitting en banc, exercised supervisory power over appeals under Fed.R.Crim.P. 39(a),[3] holding that failure to comply

---

1. In the police statement appellant related that he had carried no knife of his own but had cut the deceased with a knife which he had wrestled away from the deceased; also that he had told the driver only that "a guy jumped on me and I cut him after I taken [sic] his knife away from him." At trial, however, appellant testified that he had *tried* to take a knife away from the deceased, that when he had entered the house, he (appellant) *had* been carrying the knife which he used to cut the deceased, and that he had not made those statements to the driver. Compare the taxi driver's testimony, *supra*. On cross-examination, appellant denied giving certain answers in the statement taken by the police. Further, although appellant asserted as an excuse for any alleged inconsistencies that the questioning had occurred in the early

morning hours when he had been without sleep and weak from loss of blood, there was ample basis for the jury to reject this explanation as unreliable and similarly discredit his self-defense version of the fight.

2. Parole was granted and appellant was at liberty for approximately two years and was then returned to prison for parole violation.

3. "The supervision and control of the proceedings on appeal shall be in the appellate court from the time the notice of appeal is filed with its clerk, except as otherwise provided in these rules. The appellate court may at any time entertain a motion to dismiss the appeal, or for directions to the district court, or to modify or vacate any order made by the district court or by any judge in relation to the

with Fed.R.Crim.P. 39(c) [4] *as to filing of records and briefs,* after timely notice of appeal, did not foreclose review.[5] Here, although appellant had timely filed a notice of appeal in 1953, he not only failed to perfect that appeal but it was dismissed by order of this court on May 11, 1954, for failure to respond to a show cause order. Thus, in the situation now before us, unlike the situations in the *Belton* and *Blunt* cases, dismissal of the appeal divested this court of appellate jurisdiction and the essential basis for direct review is absent. Compare Robinson v. United States, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960). To revive the appeal we would be obliged to treat the instant Section 2255 motion as presenting a direct appeal or treat the 1954 dismissal as unimportant.

In the *Belton* case, appellate jurisdiction was maintained pursuant to the original notice since the appeal was not dismissed. Although the trial errors committed in *Belton* were thought sufficient

to justify the exercise of extraordinary appellate power when jurisdiction over a direct appeal had not been divested, we do not find here that degree of error which would warrant reversal nearly eleven years after conviction when the appeal had been dismissed nine years ago, with due notice to appellant.[6]

Assuming, *arguendo,* that the trial error complained of would have warranted reversal for a new trial ten years ago,[7] we cannot find in these circumstances and on this record a basis now for a holding that would convert the present proceedings into a direct appeal after a lapse of nearly 12 years from the event. To grant the extraordinary relief sought at this late date would be warranted to, prevent manifest injustice were such shown here but not to correct a trial error.

Petitioner's motion under Section 2255 was properly denied by the District Court.[8]

Affirmed.

4. Rule 39(c) directs that the record on appeal shall be filed with the court of appeals within forty days after the filing of the notice of appeal.

5. This holding derives from the alternative ground for decision in the principal opinion of four judges, 104 U.S.App.D.C. at 85–86, 259 F.2d 815–816, and the concurring opinion of two judges joining in this ground, 104 U.S.App.D.C. at 86, 259 F. 2d at 216. It should be noted that the excusable neglect ground was expressly rejected by the concurring opinion and thus did not command a majority. Cf. Christoffel v. United States, 88 U.S.App. D.C. 1, 4, 190 F.2d 585, 588, (1951).

6. It is hardly correct to say, as the dissent does, that in *Belton, supra,* "we," in the sense of this court, found relief imperative because of "a serious error"; this characterization of the nature of the error was expressed in the principal opinion (not by a majority of the court) as justifying waiver of the rules *for filing the record.* The *Blunt* case, *supra,* rested on the court's view that the *"very* substantial questions," 100 U.S.App.D.C. at 72, 244 F.2d at 361 (emphasis added), excused *timely filing of the record.* Blunt,

of course, had an appeal pending; as in the *Belton* case, we had only to waive our rule as to the filing schedule in a valid appeal then pending.

7. Any implication that the challenged statement of the witness Hodge under no circumstances could have been admitted in evidence is not correct. It is very unlikely that this statement would have been rejected had the impeachment proffer been made as part of the Government's case in chief. At this late stage we ought not ignore this factor entirely. In his charge to the jury the District Judge gave the usual limiting instruction:

"Now, as to the statement of the witness Hodge to the police officers which has been presented to you and read from, you are to consider that statement by way of impeachment and in considering it for the purpose of determining whether the statement impeaches the statement of the witness Hodge, you are not to consider it as independent substantive testimony. * * * *"

Counsel made no objection concerning this instruction.

8. An appeal from denial of Section 2255 relief, like habeas corpus, Whitney v. Zerbst, 62 F.2d 970, 972 (10th Cir. 1933), cannot be a substitute for direct appeal.

prosecution of the appeal, including any order fixing or denying bail." Fed.R. Crim.P. 39(a).

BAZELON, Chief Judge (dissenting).

This case presents the familiar [1] story of an appellant whose ignorance, indigence and incarceration foreclosed appellate review of his conviction.[2] The story here is particularly poignant since, as I shall show, appellant's conviction in March 1953—more than ten years ago—for second-degree murder was clearly erroneous.

His retained trial counsel filed a timely notice of appeal and the District Court granted leave to appeal in forma pauperis and ordered a transcript of the proceedings at Government expense. Counsel filed the record on appeal and submitted a brief on June 3, 1953. The Government moved to strike the brief and dismiss the appeal because the brief did not contain a statement of the case or an appendix as required by the rules of this court. Before the court acted on the motion, counsel, on August 22, 1953, moved to dismiss the appeal without advance notice to appellant.[3] He stated to this court his "opinion that no substantial question of law is presented by this appeal," although a post-conviction motion for a new trial, the statement of points on appeal and the defective brief, all prepared by the same counsel, clearly reveal serious error. On September 25, 1953, the court (1) denied the Government's motion to dismiss the appeal; (2) granted counsel's motion to withdraw; and (3) allowed appellant time for preparing and filing his own brief.[4] After appellant made two abortive efforts to file a pro se brief in conformity with the rules of the court,[5] the court, sua sponte, ordered the appellant to show cause why this appeal should not be dismissed. He failed to respond, and the appeal was dismissed on May 11, 1954.

The present motion to vacate sentence, 28 U.S.C. § 2255, filed by appellant, pro se, on January 10, 1963,[6] alleges that

Here appellant, whose appeal in this court is from denial of Section 2255 relief, now asks us to take his case as on direct appeal and to "dismiss the Section 2255 appeal as moot."

1. See, e. g., Boykin v. Huff, 73 App.D.C. 378, 121 F.2d 865 (1941); Belton v. United States, 104 U.S.App.D.C. 81, 259 F.2d 811 (1958).

2. See also Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424 (1964) (Concurring opinion of Mr. Justice Goldberg).

3. Appellant opposed the motion on the ground "that counsel for appellant has filed said motion to dismiss appeal because appellant is without funds * * *." Appellant's affidavit stated that counsel, on July 10, 1953, demanded payment of "at least $100" for the preparation of the defective brief.

4. We did not appoint counsel to represent Robinson although he was incarcerated and the District Court had allowed him to appeal in forma pauperis. No action was necessary on the Government's motion to strike the brief as it was withdrawn when counsel left the case.

5. The frustrations encountered by this indigent appellant appear from a letter sent by the clerk of the court on April 21, 1954, rejecting his second effort to submit a brief:

"The above-entitled case will be dismissed unless you file an answer to the order to show cause. The time within which this may be done has been extended to May 1, 1954.

"You may also file an original and three copies of a motion for leave to file brief and appendix, time having expired, showing therein excusable neglect as provided in Rule 32(b) (2) of the General Rules of this Court, and leave to file your brief must be granted by the Court, before same may be filed. An original and six legible typewritten copies of your brief and appendix must be submitted in accordance with Rule 18(g) and proof of service in compliance with Rule 31(h) (3) of said rules must be submitted with your brief.

"I am returning herewith your brief and appendix as they may not be filed except on leave of Court and on motion as described above."

6. An earlier § 2255 motion was filed in 1956 and new counsel was appointed by the District Court. The motion was withdrawn in 1957 because counsel informed the court that Robinson wished to be considered for parole. He was paroled in May 1959, and remained on probation until parole was revoked in 1961. Since then he has contested the revocation, as yet unsuccessfully. There is

the indictment was defective, that certain statements were illegally obtained and that his counsel was ineffective.[7] Without appointing counsel and without a hearing the District Court denied relief. It also denied leave to appeal without prepayment of costs. We granted such leave over Government opposition and appointed counsel.[8] Counsel now urges that we reinstate the direct appeal in order to consider the error at trial. Considering the serious nature of that error and the unfortunate circumstances which culminated in the dismissal of the direct appeal, I would grant counsel's request.

The trial error appears from the following: Appellant and his cousin were looking for an "after hours" liquor outlet when they met one Hodge and a companion, Houston, who took them to decedent's house to buy bootleg liquor. With Hodge, defendant, decedent and decedent's wife in the room, a knife fight ensued. The Government sought to prove that appellant had been "messing" with a small lamp, and that when the decedent asked him to stop, appellant provoked the fight which resulted in decedent's death. The appellant presented a self-defense version of the facts, claiming that, although he was merely straightening the globe on the table lamp, the decedent ordered him to "quit messing with the lamp" and then with no further provocation attacked appellant with a kitchen knife. Thus, of crucial importance was whether or not appellant was "messing with the lamp" and, of course, who was the attacker.

Hodge, one of the Government's eyewitnesses, testified to appellant's presence at the scene, the fighting, and to the absence of any knives as far as he could see. On cross examination, to the surprise of both sides, he stated that he had not seen decedent's wife in the room. On redirect, the prosecutor claimed surprise, made Hodge a hostile witness and produced a prior inconsistent statement Hodge had made to the police. The court admitted certain parts of the prior statement solely to impeach the testimony as to the absence of the wife.[9]

After appellant had testified in his own behalf, and the defense had closed, the Government recalled Hodge in rebuttal. He was asked, as defendant had been asked on cross, whether defendant had been "messing with decedent's lamp" before the fight. Hodge denied seeing that. Then the prosecutor asked whether Hodge had told the police that appellant was messing with the lamp. Hodge denied saying so. Defense counsel then objected that the Government was asking questions of its own witness, whom it had already impeached, only to impeach him again. The objection was overruled. Then the following occurred:

"Q   And isn't it a fact that when you were there it was the defendant Robinson that knocked the globe off?

"A   As I said before, I didn't see that.

"Q   And didn't you state to the police, and I quote, 'knocked the globe off'?  And isn't it a fact the defendant Robinson said, 'I don't give a goddam about you or your lamp'?

"A   If he did say it I didn't hear it.

nothing in the record to indicate that counsel ever studied the case on its merits.

7. Since appellant did not present to the court below the facts surrounding the dismissal of his appeal, we need not, in this proceeding, consider whether counsel's conduct amounts to "ineffective assistance." Plummer v. United States, 104 U.S.App.D.C. 211, 260 F.2d 729

(1958); Lampe v. United States, 110 U.S.App.D.C. 69, 288 F.2d 881 (1961). And see Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

8. Misc. No. 2136, order of June 3, 1963.

9. Although defense counsel was willing to stipulate to the presence of the wife, the prosecutor insisted on reading the statement.

\* \* \* \* \* \*

"Q   Isn't it a fact that directly after that Connell Robinson started cutting Happy?

"A   I don't know, sir.

\* \* \* \* \* \*

"Q   And isn't it a fact that you said this to the police, 'After the boy said this he started cutting Happy'?

"A   No, sir."

This part of Hodge's statement was, of course, not admitted on direct examination, since it did not relate to the presence of decedent's wife. It was not offered or received in evidence on rebuttal; nor could it have been received as Hodge had already precluded a claim of "surprise" by his earlier recantation.[10]

This error was seriously compounded in the prosecutor's closing argument when he twice read to the jury the "lamp" and "cutting" statements. He described these matters as "that which is in evidence" and "that is as much as I introduced in evidence." And the context in which he used them made it appear that they had testimonial value. Their use in argument for even impeachment purposes would have been improper.

The content of the "lamp" and "cutting" statements was neither cumulative nor collateral, but went directly to appellant's guilt. No other witness testified coherently concerning the events

leading up to the fatal altercation. The only other eyewitness who testified [11] was the decedent's wife whose testimony, if not biased, was at best unclear, probably because of her inability to hear the questions asked.

In Belton v. United States, 104 U.S. App.D.C. 81, 259 F.2d 811 (1958), we considered a strikingly similar error so prejudicial as to require reversal even though more than ten years had passed since the commission of the crime charged. The description of the error in *Belton* fits this case precisely:

"None of these references to a prior statement which was not in evidence—none of these prejudicial implications of the prosecutor himself—was permissible. \* \* \* In view of the evidence which was properly before the jury it is impossible to avoid the conclusion that the conduct of the prosecution might have affected the verdict of the jury, on the issue of self-defense or the degree of homicide, by leading them to believe that evidence against appellant of a damaging character existed which the court would not permit the jury to hear. This grew out of tactics which violated the rulings of the court and appellant's right to a trial on the evidence given under oath from the witness stand rather than given in effect by the prosecutor from counsel table." [12]

---

10. D.C.Code § 14–104; see Belton v. United States, supra, 104 U.S.App.D.C. at 82, 259 F.2d at 813.

11. One eyewitness, Houston, was not called by either side. At trial the defense requested an instruction that the jury may infer that his testimony would have been inimical to the Government's case. The judge charged instead that an inference could be drawn from the absence of a witness peculiarly available to one side or the other that the testimony of such witness would have been unfavorable to the party who failed to call him. Counsel urges that this was reversible error.

Because the record is unclear concerning the availability of this witness on the day of the trial, I do not consider this contention.

12. Id. 104 U.S.App.D.C. at 84, 259 F.2d at 814.

The prosecutor must confine his argument to matters which are in evidence: "[S]ummation should not be used to put before the jury facts not actually presented in evidence." United States v. Spangelet, 258 F.2d 338, 342 (2d Cir. 1958); and see Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Brennan v. United States, 240 F.2d 253, 263 (8th Cir. 1957).

Of Belton's failure to file a record on appeal, we held that Rule 39(a) [13] gives us

" * * * the power to consider an appeal on a record filed out of time, *once we have obtained jurisdiction by the filing of a notice of appeal within time, as was here done.* The late Chief Judge Stephens stated the applicable principles in a case where the court rejected the claim that the delay was due to excusable neglect within the meaning of Rule 45(b) (2): ' * * * The Supreme Court has * * * vested the United States Court of Appeals with discretion to consider and determine questions on appeal notwithstanding failure of counsel to make due compliance with the usual procedural requirements. This discretion may be exercised either on application of a party or by the court *sua sponte.*' Christoffel v. United States, 88 U.S.App.D.C. 1, 6, 190 F.2d 585, 590." [14]

Here, as in Belton, a notice of appeal was filed. We excused Belton's failure to file a record on appeal because he was indigent and without counsel. Here, the record on appeal was filed and appellant sought diligently to pursue the appeal but was thwarted by his counsel's assertion to this court that the record presented no substantial question. If we had examined the record, we would have determined that the appeal was meritorious and should not be dismissed. Clearly, then, our dismissal of the appeal for procedural reasons was improvident. Moreover, the circumstances in which this appeal was dismissed provide abundant grounds for holding now that appellant's failure to file a brief was due to "excusable neglect" within the scope of Rule 45(b) (2). [15] We should therefore vacate our order and allow this direct appeal. [16]

The court today says that the relief requested here may be granted only to "prevent manifest injustice." No authority is cited for this standard nor is it defined. We have held this relief required by the existence of "a substantial question" [17] or a "serious error"; [18] and in Christoffel v. United States, [19] we said:

" * * * in a criminal case in which a sentence of imprisonment is involved, there is a *public interest against denial of consideration on appeal of substantial questions as to the lawfulness of the conviction.* For if the conviction is erroneous it

13. Rule 39(a), Fed.R.Crim.P. reads as follows: "The supervision and control of the proceedings on appeal shall be in the appellate court from the time the notice of appeal is filed with its clerk, except as otherwise provided in these rules."

14. Belton v. United States, 104 U.S.App. D.C. 81, 86, 259 F.2d 811, 815–816 (1958), emphasis supplied. See also Forte v. United States, 302 U.S. 220, 223–224, 58 S.Ct. 180, 82 L.Ed. 209 (1937).

15. Rule 45(b) (2), Fed.R.Crim.P. provides: "When an act is required * * * to be done * * * within a specified time, the court for cause shown may *at any time in its discretion* * * * upon motion permit the act to be done after the expiration of the specified period if the failure to act was the result of excusable neglect * * *." (Emphasis supplied.)

Although no formal motion was filed under Rule 45(b) (2), appellant in brief requested that we consider the appeal on the merits notwithstanding lateness under the Rule in filing his brief. This is sufficient. See Jordan v. United States District Court, 98 U.S.App.D.C. 160, 163 n. 3, 233 F.2d 362, 365 n. 3, rev'd on other grounds, 352 U.S. 904, 77 S.Ct. 151, 1 L. Ed.2d 114 (1956).

16. See, *e. g.*, Lebkicker v. United States, No. 13932, order of March 23, 1958; Walsh v. Goldberg, No. 17506, order of August 1, 1963.

17. Blunt v. United States, 100 U.S.App. D.C. 266, 244 F.2d 355 (1957).

18. Belton v. United States, supra, 104 U.S.App.D.C. at 86, 259 F.2d at 816.

19. 88 U.S.App.D.C. 1, 190 F.2d 585 (1951).

is abhorrent to justice that a defendant shall nevertheless suffer such a penalty for the crime charged." [20]

When an impecunious appellant has been frustrated in his attempts to present "substantial questions" concerning the lawfulness of his conviction, we have liberally construed papers submitted in order to confer jurisdiction on the court; [21] and we have allowed appeals to proceed notwithstanding lateness in filing briefs or perfecting records.[22] A fortiori, here, where a timely and proper notice of appeal was filed, and appellant diligently tried to perfect his appeal, we should not now refuse appellate review.[23] I am mindful that the conviction I would reverse took place eleven years ago and that a new trial would present great difficulties for the Government. But I am also mindful that the conviction was tainted with serious error perpetrated by the Government, not the appellant; and that appellant was unable to protect against his trial counsel's unwillingness to seek rectification of that error. The Rules allow rectification now "And of course the fact that appellant has long been in confinement cannot be ground for denying relief * * *. On the contrary * * * it is never too late to rectify serious error." [24]

I would vacate the order dismissing this appeal and reverse for a new trial.

20. *Id.*, 88 U.S.App.D.C. at 6, 190 F.2d at 590, emphasis supplied. See also Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 704–705, 67 S.Ct. 954, 91 L.Ed. 1184 (1947); Blunt v. United States, 100 U.S.App.D.C. 266, 244 F.2d 355 (1957).

21. Belton v. United States, supra; Boykin v. Huff, 73 App.D.C. 378, 121 F.2d 865 (1941); Williams v. United States, 88 U.S.App.D.C. 212, 188 F.2d 41 (1951); and see Coppedge v. United States, 369 U.S. 438, 442–443, 82 S.Ct. 917, 8 L.Ed.2d 21, n. 5 (1962).

22. Belton v. United States, supra; Christoffel v. United States, 88 U.S.App.D.C. 1, 190 F.2d 585 (1951); and see Forte v. United States, 302 U.S. 220, 223–224, 58 S.Ct. 180, 82 L.Ed. 209 (1937).

23. "While remembering that the administration of criminal justice by appellate as well as other courts must be within the law which includes those rules of procedure that are binding, we must also not forget that, subject to these limitations, it is never too late to rectify serious error." Belton v. United States, supra, 104 U.S.App.D.C. at 86, 259 F.2d at 816.

24. Belton v. United States, supra, 104 U.S.App.D.C. at 86, 259 F.2d at 816. See also Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). There, nineteen years had passed between the trial court's accepting a plea of guilty, and the decision of the Supreme Court reversing the denial of a motion for a new trial.