262 P.2d 756

**STATE v. NEAL.**

No. 7813.

Supreme Court of Utah.

Oct. 29, 1953.

McCullough, Boyce & McCullough, Salt Lake City, for appellant.

Clinton D. Vernon, Atty. Gen., J. Lambert Gibson, Deputy Atty. Gen., Allen B. Sorensen, Q. L. R. Alston and Bruce S. Jenkins, Asst. Attys. Gen., for respondent.

124

## PER CURIAM.

After the original decision in this case was handed down, defendant engaged other counsel who filed a petition for rehearing, which the court after due consideration has concluded to deny. In doing so we make observation concerning the following points upon which it is urged that a rehearing should be granted.

1. The cross-examination of defendant by the District Attorney concerning previous crimes: This matter was fully briefed on the appeal and was dealt with in the original opinion. While such cross-examination would normally have been error, under the facts of the instant case, it was justified on the basis of motive; that is, to show that the defendant was a fugitive, having just committed a series of crimes, and was therefore desperate and more likely to kill an officer trying to apprehend him.

This case is not comparable to one where a defendant with an unsullied record is besmirched by insinuating cross-examination. The fact is that the defendant himself on his direct examination voluntarily related a sequence of vice and crime he engaged in with a prostitute procured in Reno, Nevada; he told of purchasing the gun, the shells and of perpetrating an armed robbery of a motel in Ogden, Utah, just two days before the murder. Asked about his desire to escape he said that

"* * * I thought I could talk my way out * * * because I was wanted for no felonies *in this state*," implying that he knew he was wanted on felonies elsewhere. He further admitted that he was on parole; that he knew he was wanted for stealing, forging and cashing upwards of 40 checks from the Alamo Cleaners in California. Responding to questions as to purchase of the cartridges he said: "Well, I committed robberies before, and I figured that if I run out of funds I would do that." The District Attorney cross-examined him concerning other recently committed robberies in California, which he denied. No proof was offered that he committed them.

██ It is true that evidence that a person committed other crimes is inadmissible to prove that he committed the crime in question. The authorities uniformly hold that the fact that such evidence might have been incompetent for one purpose does not preclude its admissibility where a legitimate and proper purpose relevant to an issue in the case exists. This court held in State v. Scott,[1] that such evidence is properly received, "If the evidence tends to show intent or motive". Wharton says "* * * other offenses are inadmissible when offered for the purpose of proving the crime charged, or to show that the defendant would be likely to commit the crime with which he is charged * * * [but] the evidence of other crimes is admissible to show *motive,* and, where relevant for this

1. State v. Scott, 111 Utah 9, 175 P.2d 1016, 1022.

purpose, the admissibility is not affected by the fact that such evidence may prove other crimes." [2]

■ The state of mind of the defendant as to his knowledge that he was being sought, his fear of apprehension and the consequences thereof were certainly material as bearing upon the likelihood and motive he might have for killing the arresting officer. As a cautionary measure, the trial court instructed the jury in reference to such evidence: "This evidence may be considered by you only in connection with whether or not the defendant had a motive to kill Owen T. Farley." There is no indication of any bad faith or over-reaching on the part of the District Attorney. For the reasons indicated we believe under the fact situation which existed no prejudicial error was committed against the defendant by permitting the cross-examination.

The other 3 points we consider all deal with the absence of counsel at parts of the proceedings. The record is silent as to the reason why counsel were not present. We observe, however, that although counsel were court appointed, a perusal of the record indicates that in all of the prior proceedings and in the trial they were careful, competent and diligent in protecting the rights of the accused.

■ 2. Absence of counsel at the time of verdict: When the verdict was returned, counsel had apparently been excused by the court during the jury's deliberation. The only suggestion as to anything counsel could have done for the defendant at that time was to ask that the jury be polled and request a favorable time for sentence. The record shows that the court himself carefully attended to this by asking each juror individually if he agreed with the verdict; all answered in the affirmative; he then inquired of defendant Neal his desire as to the time of sentence. Neal asked for the greatest possible time, stating that he wanted to appeal. The maximum permitted under the statute would have been 10 days, but at Neal's request sentence was set over until October 16th, a total of 12 days. We are unable to see how defendant was in any way prejudiced by the absence of counsel on that occasion.

■ 3. Absence of counsel at the time of sentence: Neal had had 12 days' notice that his sentence would be imposed on October 16th. At that time Judge Ellett called the case and Neal's counsel was not present; according to the minute entry of the proceeding he was asked if he had any reason to show why sentence should not be pronounced upon him. He answered that he had none and made no request or comment concerning the matter of counsel. A motion for new trial had theretofore been filed on October 9th. It was denied

2. Wharton's Criminal Evidence 11th Ed., Vol. 1, Sec. 262; see also Wigmore on Evidence, Vol. 1, Sec. 277.

and sentence was imposed. Under the verdict as rendered, without recommendation of leniency, the death sentence was mandatory [3] and there was nothing counsel, nor even the court, could have done except to carry out the mandate of the statute. It would be a useless formality to remand the case for the purpose of having the sentence pronounced with counsel present.

4. Absence of counsel when the motion for a new trial was denied: As above indicated, the motion for a new trial had been filed on October 9th; and Neal had had 12 days' notice that sentence would be imposed on October 16th, at which time the motion for a new trial was also denied. On November 3rd defendant filed a notice of appeal and also on the same date filed a "Motion for a Rehearing of Motion for a New Trial." The latter motion was set for hearing, presented to the court by counsel and was ruled upon on November 17, 1953. The State asserts that this cured any defect which might have existed in not having an opportunity for oral argument on the original motion for a new trial. Defendant counters that because the notice of appeal had been filed on November 3rd the district court lost jurisdiction and the hearing on the 17th was a nullity. It appears duplicitous for the defendant to file a Motion to Reconsider the Denial of the Motion for New Trial, have it called up and present the matter to the court in an attempt to get a favorable rul-

ing thereon, then after the ruling goes adverse to him, turn about and claim that because of his own conduct in filing the prior notice of appeal, the proceeding which he himself had initiated and carried forward was a nullity.

The answer to his argument is found in the fact that the notice of appeal was filed by him and for his own benefit. The court apparently in good faith and under the belief that he had authority to grant the motion to reconsider if he had deemed it advisable, and at defendant's request, had a plenary hearing and heard argument of counsel on his motion. After having duly considered it, he ruled adversely to the defendant. It cannot be questioned that had he ruled otherwise, and granted a new trial, the defendant would have withdrawn or waived his notice of appeal which he would have had a right to do. He therefore had a full consideration by the district court of his request for a new trial.

We are aware of the seriousness of our responsibility in a case where a man's life is involved. To the degree we are capable, we have carefully scrutinized all matters of substance claimed as error by the defendant. We are also conscious of the fact that a trial in the courts of this state is a proceeding in the interest of justice to determine the guilt or innocence of the accused and not just a game. We will not reverse criminal causes for mere error or irregularity. It is only when there

3. 103–28–4, U.C.A.1943 now 76–30–4, U.C.A.1953.

has been error which is both substantial and prejudicial to the rights of the accused that a reversal is warranted.[4] The defendant was entitled to a full and fair presentation of the case to a jury of unbiased citizens and to have his rights safeguarded by competent counsel. This has been done. We believe the defendant has been accorded the full measure of protection afforded him under the constitution and the laws of our state. We find no matter in the petition for rehearing of sufficient moment to justify granting it. It is therefore denied.

HENRIOD, J., not participating.

---

4. Sec. 77–42–1, U.C.A.1953; State v. Cluff, 48 Utah 102, 158 P. 701.