[Crim. No. 6986. In Bank. July 18, 1962.]

In re DUANE K. MARTIN on Habeas Corpus.

James A. Clayton, under appointment by the Supreme Court, for Petitioner.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

THE COURT.—This is an application by Duane K. Martin, an inmate at Folsom State Prison, for a writ of habeas corpus on the ground that he was deprived of his right of appeal through his attorney's neglect and failure to prosecute the same, and for that reason was deprived of his liberty. An order to show cause, directed to the Warden, Folsom State Prison, issued, and counsel has been appointed to represent petitioner in proceedings before this court.

On June 3, 1959 petitioner was convicted of robbery of the first degree and found to have suffered prior convictions of murder of the first degree, robbery of the first degree and grand theft. At the time of the commission of the instant offense petitioner was on parole from the prior convictions. He was represented at his trial by private counsel. Petitioner alleges that on July 31, 1959, he engaged other counsel to argue a motion for a new trial, and if unsuccessful, to "do whatever was necessary in connection with the proceedings on

appeal.'' However, the attorney has raised some question as to the extent of the representation to be furnished by the latter. A Mrs. Pebble Cosby, a friend of petitioner who arranged for the employment of counsel, states that the attorney was to argue the motion for a new trial and if unsuccessful to prosecute an appeal, all for a $1,000 fee, with an understanding that an additional $1,500 would be paid after petitioner was free on bail or was granted a new trial. The attorney contends that the oral contract of employment required the payment of $1,000 from Mrs. Cosby before he took the case, and an additional $1,500 if he was to perfect an appeal should the motion for a new trial be denied. Petitioner himself had little to do with the fee arrangements, and Mrs. Cosby was the source of all funds to be made available.

Whatever the financial arrangements, the attorney did, on September 11, 1959, argue the motion for a new trial. It was denied the same day and on September 14, 1959, the attorney filed a notice of intention to appeal from the judgment of conviction and the denial of the motion for a new trial. Thereafter there were no communications between petitioner and his attorney. The latter took no further action in the matter except to request and obtain a 60-day extension of time within which to file an opening brief. The appeal was dismissed on April 29, 1960, under rule 17, subdivision (a), Rules on Appeal, for failure to file an opening brief.

During the time when the appeal was pending, and after its dismissal, petitioner made a sincere effort to ascertain the status thereof. He states that he made repeated efforts to communicate with his attorney; that he addressed a letter to the District Court of Appeal in February 1960 and was advised of the extension of time to March 31, 1960, within which to file the opening brief; that he wrote again on June 13, 1960 inquiring as to the status of his appeal and as to what could be done to protect his right of appeal, and was advised by the clerk of the dismissal on April 29, 1960, and that ''This Court has now lost jurisdiction;''[1] that he again attempted to communicate with his attorney, requesting a return of records but received no reply; that on August 5, 1960, he wrote to the State Bar of California, requesting its assistance; that on September 15, 1960, he again wrote the District Court of Appeal asking that court to ''Re-instate my appeal'' and was advised by the clerk that the remittitur had issued on June

---

[1] It appears, however, that the remittitur did not issue until June 29, 1960.

29, 1960, and that the court had "absolutely no jurisdiction—even to reinstate your appeal." Finally, on September 21, 1960, petitioner requested the San Diego Superior Court to assist him in procuring his records and on November 14, 1960, he filed in that court a petition for a writ of mandate asking that the attorney be ordered to forward all records, transcripts and documents relating to petitioner's cause. On November 17, 1960, the attorney delivered the desired documents to petitioner.

As stated, it is the attorney's position that he was employed only to prosecute the motion for a new trial and perhaps to keep the right of appeal open until compensated for prosecuting the appeal, or until he determined that the appeal was without merit. He was not compensated, and states in a letter to Mrs. Cosby in explanation of his actions: "Only when I was absolutely convinced that there was no justification for reversal did I abandon the appeal." The decision to abandon was never communicated to petitioner.

Although it has been held that it is a dereliction of duty for an attorney to abandon a cause on appeal without the consent of his client (*Larimer* v. *Smith*, 130 Cal.App. 98, 101 [19 P.2d 825]; see also *People* v. *Davis*, 48 Cal.2d 241, 256 [309 P.2d 1]), the question here is not the misconduct, if any, on the part of the attorney, but rather whether petitioner had knowledge that his appeal was not being prosecuted and with that knowledge stood by without taking action to preserve it. If the petitioner's allegations and Mrs. Cosby's story are factually true, then it appears that petitioner may be entitled to some relief on grounds hereinafter set forth. While we are persuaded by the foregoing and other matters appearing of record that petitioner is innocent of any personal fault for the dismissal of his appeal, the Attorney General, with commendable fairness, has made it unnecessary for us to draw such a conclusion by his concession at oral argument that petitioner, under the circumstances, sought as best he was able to perfect an appeal through his counsel; that he attempted to keep informed of the status of the appeal but that counsel failed to advise petitioner thereof or of the attorney's decision to abandon the appeal. In light of such concession it is manifest that petitioner cannot be charged with consent to or even knowledge of the abandonment in the instant circumstances.

In spite of the information given to petitioner by letters received from the clerk of the District Court of Appeal, that court still had some jurisdiction to render relief to petitioner

at the time he requested the same by his letters of June 13 and September 15, 1960. ■ On June 13 the appeal had been dismissed but the remittitur had not yet gone down. It was provided in rule 25, Rules on Appeal, in subdivision (c) : "A reviewing court, for good cause, may stay the issuance of a remittitur for a reasonable period." The default in the failure to file the brief might have been relieved pursuant to rule 53, subdivision (b) which provided in part: "The reviewing court for good cause may relieve a party from a default occasioned by any failure to comply with these rules, except the failure to give timely notice of appeal." And the time within which to file the brief might have been extended pursuant to rule 45, subdivision (c), which provided: "The time for filing a notice of appeal, or the granting or denial of a rehearing in the Supreme Court or District Court of Appeal . . . shall not be extended. The Chief Justice or Presiding Justice, for good cause shown, may extend the time for doing any other act required or permitted under these rules. . . ." (See also *Sanders* v. *Warden*, 106 Cal.App.2d 707, 708 [236 P.2d 19].)

■ That the District Court of Appeal does retain some vestige of jurisdiction, even after the remittitur has gone down, is apparent from rule 25, which provides in subdivision (d) : "A remittitur may be recalled by order of the reviewing court on its own motion, on motion or petition after notice supported by affidavits, or on stipulation setting forth facts which would justify the granting of a motion." Relief after the remittitur had gone down was made available in the case of *In re Rothrock*, 14 Cal.2d 34 [92 P.2d 634]. ■ It was held there that while the general rule is that an appellate court loses all control and jurisdiction over a cause after remittitur has been issued, a mistake or an improvident act which results in prejudicial error or a miscarriage of justice may nevertheless be corrected upon a recall of the remittitur. The court, quoting with approval from 23 California Law Review at page 354 where numerous authorities were reviewed, stated at page 39: " 'It would appear from these cases that a *remittitur* will be recalled when, but only when, inadvertence, mistake of fact, or an incomplete knowledge of all the circumstances of the case on the part of the court or its officers, whether induced by fraud or otherwise, has resulted in an unjust decision.' " A motion to recall the remittitur was granted in the *Rothrock* case about three years after the judgment on appeal became final. (See also *Trumpler* v. *Trumpler*, 123 Cal. 248 [55 P. 1008] ; *Isenberg* v. *Sherman*, 214 Cal. 722

[7 P.2d 1006]; *Rowland* v. *Kreyenhagen,* 24 Cal. 52.) In *Southwestern Inv. Corp.* v. *City of Los Angeles,* 38 Cal.2d 623 [241 P.2d 985], a motion to recall the remittitur was denied for lack of a showing of good cause. ▮ However, the court remarked at page 629 : ''The decisions above cited establish that the extraordinary remedy by motion to recall the remittitur may be invoked only in cases of fraud or imposition practiced upon the court or upon the opposite party, or where the judgment was based on a mistake of fact *or occurred through inadvertence.*'' (Emphasis added.)

▮ The policy of appellate courts, of course, is ''to hear appeals upon the merits and to avoid, if possible, all forfeiture of substantial rights upon technical grounds.'' (*People* v. *Megugorac,* 12 Cal.2d 208 [82 P.2d 1108].) It has been suggested '' '[i]n criminal cases . . . the interest of the state that justice be done should reinforce the appellant's claim that his appeal be considered on the merits. There late appeals might well be permitted wherever appellant has not been guilty of culpable negligence.' '' (*People* v. *Aresen,* 91 Cal.App.2d 26, 30 [204 P.2d 389], quoting from 36 Cal.L.Rev. 303.) ▮ Such policy has been applied where, through the neglect of his attorney, a litigant has been placed in default on an appeal. In *Strong* v. *Mack,* 58 Cal.App.2d 805 [137 P.2d 748], the respondent moved to dismiss for failure to file an opening brief. The appellant moved to be relieved from default because his delay and neglect were excusable. The court stated at page 809 : ''In California attorneys are licensed to practice law. This in itself is a representation to the public that the licensee is possessed of some knowledge of the law and procedure and may be expected to apply that knowledge in representing a client, who ought to be entitled to rely upon this representation when he engages an attorney. If the attorney fails in his duty, and fails to follow established procedure in the matter of filing a brief on time, to deprive the client of his day in court for no fault of his own seems to be a result to be avoided if possible. It is a severe penalty to be inflicted on a client to deprive him of his day in court for no fault other than his reliance on the implied representation of competency made by the licensing of the attorney. . . .''

The applicable federal rule is expressed in *Boykin* v. *Huff,* 121 F.2d 865 [73 App.D.C. 378], where after a conviction and denial of a motion for a new trial a defendant wrote the trial court concerning a possible appeal. The trial judge responded in a manner which indicated to that defendant that he could

not seek appellate relief. The reviewing court directed that the defendant's original letter of inquiry be deemed a notice of appeal. It treated the court's letter as having constituted a denial of due process, in that persons such as the defendant who are indigent, unrepresented, ignorant and incarcerated are entitled to be fully and accurately informed as to their status. The court stated as follows at page 870: "In an entirely negative sense, nothing was done, so far as the record shows, which infringed any right appellant may have had. But to some extent, when the fundamental rights of citizens are at stake, more especially when they are those of indigent persons relating to their lives or personal liberty, there is an affirmative duty which, however undefined in ultimate scope, requires not only that the court not mislead, but that it positively and fully inform the accused concerning his basic rights. This obligation assumes special authority when he is not represented by counsel and is confined in prison and unable to speak for himself except by mail. . . . The first question is whether the court in effect denied, or prevented appellant from exercising, a right of appeal. We think the answer must be affirmative. Appellant was a layman. He was indigent. He did not know whether or not he had a lawyer, because he was uncertain whether assigned and voluntary counsel would continue to represent him. But he slept on no rights and took no chances. Within time for taking appeal, he notified the court of his uncertainty as to the intentions of his attorneys and, unequivocally, of his desire and purpose to appeal." The analogy in the *Boykin* and instant cases cannot be ignored. It is true that here we are dealing with a dismissal for failure to file an opening brief whereas in the *Boykin* case there was involved the failure to file a notice of appeal. But under our rules the latter is jurisdictional (*In re Del Campo*, 55 Cal.2d 816, 817 [13 Cal.Rptr. 192, 361 P.2d 912]), while the former is not (Rules on Appeal, rules 45, subd. (c) and 53, subd. (b)) and there is therefore greater reason for granting relief in the instant case.

 ■■■ Where a prisoner seeking judicial relief fails to take timely action due to an act or restriction of those charged with official responsibility, it has been held that such person cannot be deprived of the right to obtain his relief. (*People* v. *Slobodion*, 30 Cal.2d 362 [181 P.2d 868].) Where the acts which cause a late filing are those of a clerk of the court or other administrative officer, the right to file is preserved. (*People* v. *Howard*, 166 Cal.App.2d 638 [334 P.2d 105]; *People* v. *Stinchcomb*, 92 Cal.App.2d 741 [208 P.2d 396].)

In the instant case the petitioner was, in a strictly technical sense, represented by counsel. But it was obvious that he was not advised by his counsel in spite of repeated efforts to communicate with his attorney, and his inquiries to the District Court of Appeal so indicated. The information tendered petitioner by the clerk of that court, while perhaps not inaccurate or calculated to mislead when conveyed to one familiar with procedures on appeal, nevertheless manifested to petitioner that there were no remedies then available by which petitioner, through timely action, could preserve his appeal. By his letter of June 13, 1960, he had requested of the court, to the best of his ability, additional time in which to file his brief before the remittitur had issued. By his letter of September 15, 1960, he had applied for a recall of the remittitur, to the best of his ability, after it had issued. Although petitioner's letters were not couched in legal terms, nevertheless the court had jurisdiction to grant the relief sought if due and proper application was made therefor, and on the showing now made in the instant proceedings petitioner was entitled to such relief.

The People contend that petitioner's attorney was authorized to effect an abandonment of the appeal and did so only after a careful consideration of the merits of the appeal. But the record does not support this conclusion. Nor does it explain the attorney's steadfast although vulnerable contention that he was not employed to prosecute the appeal. In any event the People's contentions fail to meet the issues, first, as to whether petitioner himself was in any way responsible, either personally or acting through his attorney, for the delay which resulted in the default, and secondly, the effect of the misinformation furnished petitioner by the clerk of the District Court of Appeal. In none of the many cases relied on by the People does it appear that an appellant's attorney who undertook an appeal thereafter failed to prosecute it and to communicate with his client.

Habeas corpus is a proper remedy for the relief here sought by petitioner. (*In re Byrnes,* 26 Cal.2d 824 [161 P.2d 376].) The People contend that the writ does not lie, as petitioner has a statutory remedy which he has not invoked. (See *In re Alpine,* 203 Cal. 731, 739 [265 P. 947, 58 A.L.R. 1500].) Such remedy, it is claimed, is that provided by rule 53, subdivision (b), Rules on Appeal, wherein a reviewing court may relieve a default and, further, recall its remittitur. (*People* v. *Hickok,* 92 Cal.App.2d 539, 541 [207 P.2d 620];

*Lundy* v. *Lakin*, 89 Cal.App.2d 849 [202 P.2d 369].) But it sufficiently appears herein that petitioner has sought that remedy, although inexpertly, by his letter of September 15, 1960. The court's flat statement that it had no jurisdiction even to reinstate the appeal, is a sufficient denial of rights which the People now claim petitioner should pursue.

We are persuaded that petitioner is entitled to the relief he seeks. The District Court of Appeal, Second Appellate District, Division Two, is directed to recall its remittitur, vacate its order of dismissal and reinstate the appeal.

Respondent's petition for a rehearing was denied August 15, 1962.