William CHESS, Plaintiff and Appellant,

v.

Samuel SMITH, Defendant
and Respondent.

No. 16085.

Supreme Court of Utah.

Aug. 26, 1980.

342

Randall T. Gaither, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

STEWART, Justice:

Petitioner William Chess appeals from a denial of his petition for a writ of habeas corpus in the third judicial district. The petition was filed subsequent to a conviction of aggravated robbery from which no appeal was taken. Petitioner raises three issues: denial of his right to appeal due to misrepresentations made to him by his appointed counsel; denial of due process resulting from his appearance at trial in identifiable prison clothes; and denial of effective assistance of counsel due to a conflict of interest arising from representation by petitioner's counsel of two defendants in the same case.

Petitioner claims that he would have appealed his conviction in the ordinary manner but for an inaccurate representation made to him by his trial counsel. Petitioner asserts he was advised by counsel that he stood "a substantial chance" of receiving a much harsher sentence upon retrial and thus was advised not to pursue an appeal. This advice was clearly contrary to the law. Section 76–3–405, Utah Code Ann. (1953), as amended, states:

> Limitation on sentence where conviction or prior sentence set aside.—Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied.

■ Further, in light of the constitutional right of appeal to this Court from final judgments in original jurisdiction cases from the district courts, Article VIII, § 9, Utah Constitution, a person's decision to avail himself of that right may not be impaired by making it conditional upon the threat of a harsher sentence in the event that exercise of that right results in a reversal. See *Levine v. Peyton*, 444 F.2d 525 (4th Cir. 1971); *State v. Castro*, 27 Ariz. App. 323, 554 P.2d 919 (1976); *State v. Gantt*, 108 Ariz. 92, 492 P.2d 1199 (1972); *People v. Henderson*, 60 Cal.2d 482, 35 Cal. Rptr. 77, 386 P.2d 677 (1963).

■ The purpose of an appeal is to promote justice by ferreting out erroneous judgments. That purpose is not promoted by imposing on a defendant who demonstrates the error of his conviction the risk that he may be penalized with a harsher sentence for having done so. An erroneous judgment of conviction is as much an affront to society's interest in the fair administration of justice as it is to an individual's rights.

The trial court found that the petitioner "received adequate and effective assistance of counsel in deciding not to appeal his conviction." But the court made no finding as to whether petitioner declined to do so because of the alleged erroneous advice as to the possible consequences of a reversal on appeal, or because counsel thought there was no substantial appealable issue.

■ Having failed to appeal, petitioner now seeks to have his conviction set aside by a petition for a writ of habeas corpus pursuant to Rule 65B, Utah Rules of Civil Procedure. That procedure is not intended as a substitute for an appeal, *Gentry v. Smith*, Utah, 600 P.2d 1007 (1979), but it can be used to attack a judgment of conviction in the event of an obvious injustice or a substantial and prejudicial denial of a constitutional right in the trial of the matter. Rule 65B(f), Utah Rules of Civil Procedure; *Rammell v. Smith*, Utah, 560 P.2d 1108 (1977); *Johnson v. Turner*, 24 Utah 2d 439, 473 P.2d 901 (1970); *Brown v. Turner*, 21 Utah 2d 96, 440 P.2d 968 (1968).

■ One instance of an obvious injustice would be the failure of an attorney to take an appeal when there is a substantial claim

of a deprivation of a constitutional right which goes to the basic fairness of the trial. A petition for a writ of habeas corpus is clearly appropriate in such circumstances and may be properly utilized to remedy a failure to perfect an appeal occasioned by counsel. *Roddy v. Tennessee*, 366 F.Supp. 33 (E.D.Tenn.1973); *In re Martin*, 58 Cal.2d 133, 23 Cal.Rptr. 167, 373 P.2d 103 (1962); *Holloway v. Hopper*, 233 Ga. 615, 212 S.E.2d 795 (1975).

■ The alleged misstatement made to petitioner by his counsel with regard to the consequences of taking an appeal, when coupled with an alleged violation of a fundamental right during the trial proceedings, leads to the conclusion that it would be unconscionable not to determine the truth of the petitioner's allegations because, if true, they constitute reversible error.

As a substantive matter petitioner claims that it was constitutional error for him to have been tried in prison clothes. Petitioner contends that he objected to his counsel and requested him to seek an appropriate ruling from the court. The trial court, in the hearing on the petition for a writ of habeas corpus, specifically found that "[p]etitioner's appearance at trial in jail clothes is not a constitutional violation and did not prevent petitioner from obtaining a fair trial." [Emphasis added.] This finding does not specifically indicate that the prison clothes were identifiable as such, but implies as much. If they were not identifiable, the decision of the trial court denying the petition for a writ should stand. But if the clothing was identifiable as prison clothing, the petitioner is entitled to have his judgment of conviction set aside and to have a new trial.

■ The trial court found that neither the petitioner nor his attorney objected to petitioner's appearing in prison clothes at trial. Petitioner's contention is that he objected to his counsel. If that is true, the failure of his counsel to object directly to the judge is not dispositive of the issue of a violation of a fundamental right in the initial trial of the matter. The petitioner should not be held responsible for counsel's failure to make an objection to protect a basic constitutional right, especially when it is difficult to conceive of a valid tactical or strategic reason for not objecting.

■ In this case we refuse to indulge the fiction (contrary to the alleged fact) that *the petitioner* failed to assert a right when, allegedly, it was his attorney who failed to do so, and then on the basis of that default impose the adverse consequence on petitioner himself.[1] Of course, we recognize that an attorney in the course of a given trial may wish to waive various rights in pursuit of an overall strategy. But when fundamental, clear–cut rights are at stake, the waiver of which is not likely to advance any strategy, proper protection of basic constitutional rights and the more effective administration of justice are advanced when the trial judge undertakes to determine whether the defendant, himself, wishes to waive his rights.

■ The prejudicial effect that flows from a defendant's appearing before a jury in identifiable prison garb is not measurable, and it is so potentially prejudicial as to create a substantial risk of fundamental unfairness in a criminal trial. In *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), the Supreme Court stated, 425 U.S. at 504–05, 96 S.Ct. at 1693:

> The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. *Estes v. Texas*, 381 U.S. 532, [85 S.Ct. 1628, 14 L.Ed.2d 543] (1965); *In re Murchison*, 349 U.S. 133, [75 S.Ct. 623, 99 L.Ed. 942] (1955). Courts must do the

---

1. The court in *Smith v. State*, Ind., 396 N.E.2d 898 (1979), found defendant had been deprived of effective assistance of counsel due to counsel's failure to object to defendant's appearance in prison clothes. Failure to object was attributed to counsel's unawareness of *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and resulting ignorance of the current state of the law.

best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience.

The potential effects of presenting an accused before the jury in prison attire need not, however, be measured in the abstract. Courts have, with few exceptions, [footnote omitted] determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system. [Citations omitted.] The American Bar Association's Standards for Criminal Justice also disapprove the practice. ABA Project on Standards for Criminal Justice, Trial by Jury § 4.1(b), p. 91 (App. Draft 1968). This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play. *Turner v. Louisiana,* 379 U.S. 466, 473, [85 S.Ct. 546, 550, 13 L.Ed.2d 424] (1965).

■ In a matter of such fundamental importance to the basic fairness of a trial, we hold a trial judge should on his own initiative inquire of a defendant whether he wishes to waive his right not to appear in prison clothes so that the record affirmatively shows an intelligent and conscious waiver by the defendant if the defendant chooses to stand trial in prison clothes.[2] Such procedure is not an innovation in constitutional law. It is mandated with respect to acceptance of guilty pleas, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and the waiver of assistance of counsel, *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

Some of the alleged deprivations of constitutional rights which come before this Court on collateral review could be avoided by a trial judge's taking a more active role at trial in determining whether a defendant, in waiving a constitutional right that goes to the heart of the fairness of a trial, does so deliberately. Adherence to that procedure would have the effect of implementing more fully those rights and also of cutting down both the number of appeals and the number of petitions for writs of habeas corpus filed in this Court and in the federal courts.

■ It would seem that the occurrence of a defendant, armed with a presumption of innocence, standing trial before a jury in prison clothes should long ago have ceased. A decent respect for basic fairness and the indignity of appearing in a court of law in clothes which mark a defendant, who has not been convicted, as a lawbreaker would suggest as much. Indeed, we have numerous rules of evidence that prohibit the introduction of defendant's past criminal conduct solely to assure that a case will be decided on the facts untainted by past misconduct. It is axiomatic that cases should be decided on the facts, and not on prejudice, by whatever means the prejudice may insinuate itself. The potential effect on the minds of jurors in attempting to apply the presumption of innocence and the standard requiring proof beyond reasonable doubt to the evidence in a criminal case, require it. We do not intend to convey the idea that the State must provide an expensive wardrobe. We mean only that clean, respectable clothes, not identifiable as peculiarly prison clothes, should be provided. See *State v. Archuletta,* 28 Utah 2d 255, 501 P.2d 263 (1972).

We find no merit in petitioner's claim that he was denied the effective assistance of counsel because of a conflict of interest.

---

**2.** This holding departs from our decision in *Gentry v. Smith,* Utah, 600 P.2d 1007 (1979), which noted that a failure to object to an appearance in prison clothes negated any inference of compulsion. While that is true, it is not compulsion, but prejudice, that is the vice to be avoided. To the extent that *Gentry* is inconsistent with the instant holding, it is overruled.

This matter is remanded for an additional hearing as to whether the clothes worn by the petitioner at trial were identifiable as prison clothes. No costs awarded.

MAUGHAN and WILKINS, JJ., concur.

CROCKETT, Chief Justice (dissenting).

The petitioner had all of the ample protections which our law affords one accused of crime, including the assistance of competent counsel, Mr. Maurice Richards. Upon adequate and persuasive evidence, the petitioner was duly convicted of the serious and dangerous crime of aggravated robbery, for which the statutory penalty is 5 years to life. On January 11, 1975, the petitioner was sentenced to a term of 1 to 15 years (without making any mention of the problems of which he now complains). The record does not indicate whether the lesser term was imposed in error or whether the trial court exercised the prerogative given under Sec. 76–3–402, U.C.A. 1953, and sentenced the petitioner for the "next lower category of offense" in giving him only the 1 to 15–year sentence.

Subsequent thereto, attorney Richards sent petitioner a letter which stated:

Dear Mr. Chess:

As I have discussed with you on several occasions, *it is my opinion that we do not have any legal issues substantial enough to allow us to win.* Furthermore, if we were to appeal and win, it would mean a new trial. If you were found guilty at a new trial, you stand a substantial chance of receiving a sentence of 5–life, rather than the 1–15 you have already been sentenced to. Therefore, I recommend that we notify the Supreme Court that you do not intend to pursue the appeal.

I would like to hear from you as soon as possible regarding your desires in this matter. If you would like to appeal your conviction, I would appreciate it if you would outline the reasons upon which you would like me to base the appeal. [Emphasis added.]

The main opinion seems to ignore the most important proposition in the letter, to–wit: "It is my opinion that we do not have any legal issues substantial enough to allow us to win."

In the absence of any indication to the contrary, it should be assumed that Mr. Richards spoke advisedly. If an erroneous sentence has been imposed, the proper procedure is to impose the correct statutory penalty for the crime, i. e., 5 years to life.[1] This should be true, notwithstanding the provision of Sec. 76–3–405, U.C.A. 1953, and the cases stated in the main opinion.[2]

Consistent with the conclusion of the trial court that Mr. Richards gave the petitioner adequate and professional service is the fact that he left to his client to make the decision as to the alternatives available.

Three years after petitioner made that decision, he changed his mind and repudiated it by filing the instant proceeding. In it, he alleged matters which had been fully known to himself and to his attorney at the time of his trial and conviction which could then have been raised at that time, or at least at the time of sentence, or on an appeal, none of which was done. In the instant proceeding, his major attack was that he was "denied effective assistance of counsel." Mr. Richards is a lawyer who is capable, experienced and of good reputation; and the record shows that he capably fulfilled his duty in identifying himself with the petitioner's cause. That contention of petitioner being without merit, the only claim of injustice he now asserts is that he was tried in "jail clothes" issued by the Weber County Jail.

These observations are pertinent: There is no indication in this record as to what type of clothing the petitioner was wearing,

1. *Belt v. Turner*, 25 Utah 2d 230, 479 P.2d 791 (1971).

2. That the later imposition of a greater penalty which is justified in law does not violate constitutional protections, see *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Moon v. Maryland*, 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970); and *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).

whether it was poor, rich or nondescript; and incidentally, there is no such thing as "jail clothes" in the sense of being in a uniform or having distinctive markings so indicating.[3] In any event, that sole fact would have revealed nothing new to the jury, certainly nothing concerning his guilt or innocence. They could not have failed to be aware that a man charged with armed robbery was in custody and being held in jail. Indeed, that fact was brought out in the evidence. Moreover, there is no basis other than the merest conjecture as to whether whatever type of clothing the petitioner was wearing would inspire sympathy for, or prejudice against, the petitioner, or would have any effect on the jury's determination of his guilt or innocence.

In the interest of giving effect to legal procedures and the solidarity of judgments once fairly arrived at, it is our settled law that in order to justify reversing a conviction, it is essential that it be made to appear both that an error was committed and that it was prejudicial in that there is a reasonable likelihood that it affected the outcome of the trial.[4]

In summary, there are several propositions, each of which should prevent the reversal of the judgment:

First, the absence of any credible basis in the evidence to show that the petitioner wore so—called jail clothing, or that there was any prejudice which resulted therefrom.

Second, failure to call attention to the matter either at the time of the original trial, or at the time of sentence, or on appeal.

Third, there are the presumptions of regularity and verity of the original trial and the judgment which has not been accorded.

Fourth, the same statement applies as to this proceeding and the affirmative duty to show prejudicial error.

Fifth, all of those, together with the too—long delayed complaint about matters which should long since have been at rest, combine, in my mind, to make a convincing case for supporting the judgment of the trial court.

This petitioner has had not only all of the protections the law allows, including the jury trial, assisted by competent counsel, but he was also given a full and fair opportunity in this habeas corpus proceeding to present any evidence to persuade a different, fair and conscientious district judge that he has suffered an injustice. Having failed in both of those trials, the majority opinion directs that this proceeding be further proliferated. That is the prerogative of this Court to which I owe such deference as is appropriate. But it is equally my prerogative and responsibility to express my disagreement therewith and my judgment that there should be no such further proceedings. I would affirm and approve the judgments already entered herein.

HALL, J., concurs in the opinion of CROCKETT, C. J.

---

3. This case is similar to *State v. Archuletta*, 28 Utah 2d 255, 501 P.2d 263 (1972).

4. This is the express mandate of Section 77 - 42 1, U.C.A. 1953. See e. g., *State v. Neal*, 1 Utah 2d 122, 161 P.2d 756 (1953).