2000 UT 34

**STATE of Utah, Plaintiff and Appellee,**

v.

**Eugene Reed BENNETT, Defendant and Appellant.**

No. 980072.

Supreme Court of Utah.

Feb. 11, 2000.

Jan Graham, Att'y Gen., Joanne C. Slotnik, Asst. Att'y Gen., Salt Lake City, and John Kelly West, Tooele, for plaintiff.

David J. Angerhofer, Salt Lake City, for defendant.

RUSSON, Justice:

¶ 1 Eugene Reed Bennett appeals his convictions for sodomy and rape of a child. Bennett argues that being compelled to appear at trial in prison clothes violated his rights to due process and effective assistance of counsel.

¶ 2 On October 16, 1991, Bennett was tried before a jury in Third District Court. Bennett was represented by court-appointed counsel. Just prior to the first day of trial, Bennett received the clothing he had been wearing when he was booked into jail a few months earlier. Because Bennett had gained weight while incarcerated, his pants tore when he put them on. For the first day of trial, Bennett wore the only other clothing available to him, a blue jumpsuit, clearly marked with the label "Tooele County Jail" stenciled in block letters across the back. Bennett wore the jail jumpsuit during jury selection and the first part of his trial. The court did not inquire why Bennett was dressed in this manner, and Bennett's attorney did not request a postponement or continuance until civilian clothing could be obtained. On the second day of trial, Bennett's mother brought civilian clothing, which he wore. The jury convicted Bennett of two counts of sodomy on a child and one count of rape of a child.

¶ 3 On appeal,[2] Bennett asserts that his appearance in jail clothing violated his right

2. After his conviction, Bennett wrote a letter to Third District Court expressing a desire to appeal his conviction. This letter was misplaced after it was filed with the court clerk. A number of years later, Bennett filed a petition for writ of habeas corpus that was denied by Judge Tyrone Medley. In the course of appealing Judge Med-

ley's order denying habeas corpus relief, Bennett's counsel discovered the letter. This court vacated Judge Medley's order and remanded for reconsideration as to whether the letter constituted a notice of appeal. *See Bennett v. Holden,* 932 P.2d 598, 599–601 (Utah 1997). Judge Medley held that it did and on September 2, 1997, entered an amended order reinstating Bennett's direct appeal, nunc pro tunc.

to due process. In *Chess v. Smith*, 617 P.2d 341, 344 (Utah 1980), this court held that a defendant is entitled to appear at trial in civilian clothing unless the defendant affirmatively waives that right. We stated, "The prejudicial effect that flows from a defendant's appearing before a jury in identifiable prison garb is not measurable, and it is so potentially prejudicial as to create a substantial risk of fundamental unfairness in a criminal trial." *Id.* We further held that "a trial judge should on his own initiative inquire of a defendant whether he wishes to waive his right not to appear in prison clothes so that the record affirmatively shows an intelligent and conscious waiver by the defendant if the defendant chooses to stand trial in prison clothes." *Id.* at 345.

¶ 4 The State concedes that, unless overruled, *Chess* mandates reversal of Bennett's conviction. We decline the State's invitation to overrule *Chess*. Accordingly, we reverse Bennett's conviction.

¶ 5 Chief Justice HOWE concurs in Justice RUSSON's opinion.

ZIMMERMAN, Justice, concurring:

¶ 6 I concur in the majority opinion and in that of Justice Durham. I write separately to address a bedrock judicial principle which I think the State has too easily passed over—stare decisis.

¶ 7 We held in *Chess v. Smith*, 617 P.2d 341, 345 (Utah 1980), that a trial judge has the responsibility to inquire as to why a defendant is appearing in court in prison clothes, even in the absence of defense objection. Absent such an inquiry and a reasoned determination that such an appearance is necessary, automatic reversal is the consequence. The United States Supreme Court, in *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), struck this balance differently and held that in such a circumstance, the trial judge has no such responsibility. It concluded that the defendant

must raise an objection to appearing in prison clothes. *See id.* at 512, 96 S.Ct. 1691.

¶ 8 The State and the dissent urge us to overrule *Chess* and follow *Estelle*. But both ignore the fact that we do not lightly overrule our prior opinions. *See State v. Menzies*, 889 P.2d 393, 399 (Utah 1994). In *Menzies*, we stated that given the great importance stare decisis has for the American system of common law, we will not overrule prior cases unless we are "clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent." *Id.* (citations omitted). Neither the State nor the dissent has begun to meet this standard. We have not been presented any compelling reasons to conclude, as *Menzies* requires, that the original ruling was wrong, or that circumstances have changed and more harm than good will come from adhering to *Chess*. No one suggests that prisoners should appear in jail garb, or that it is not highly prejudicial. All that is argued is that trial judges should not be responsible for inquiring about this obvious fact when it occurs. No real reason is offered as to why this is so burdensome.[1] Indeed, this is the first time the issue has been raised in the nineteen years since *Chess*, a fact that suggests trial judges and defense counsel have taken care of the problem nicely.

¶ 9 At bottom, the only justification offered for overruling *Chess* is that the 1976 holding in *Estelle* is contrary to our 1980 holding in *Chess*. Yet when *Chess* was decided, this court examined the *Estelle* case and chose not to follow the United States Supreme Court, as we are free to do. In other words, the State and the dissent simply disagree with *Chess* and the balance it struck between the interest in a judge's need to assure a fair trial and the usual requirement that a party object to errors before the trial court must act. Whatever the merit of that view, the then-members of this court chose otherwise

---

1. The dissent asserts, as a reason for overruling *Chess*, the apparent lack of broad dissemination of the *Chess* ruling to trial judges by means other than an annotation in the Code of Criminal Procedure. *See* Diss. Op. at note 9. If, in fact, trial judges were unaware of the rule, I would have

expected the issue to have re-emerged since *Chess* was decided in 1980. In any event, I certainly agree that steps should be taken by those training trial judges to make the *Chess* rule widely known.

in *Chess,* after weighing these interests. By so doing, they foreclosed our second-guessing them. We are not entitled to overturn their vote simply as an exercise of the raw power of incumbency. This would amount to a frontal assault on the principle of stare decisis. *See generally State v. Shoulderblade,* 905 P.2d 289, 292 (Utah 1995); *Menzies,* 889 P.2d at 398–99; *State v. Thurman,* 846 P.2d 1256, 1269 (Utah 1993). We must find the relatively high hurdle of *Menzies* is cleared, which has not been done here.

¶ 10 The only solid reason I can find for the State's taking the extraordinary step of seeking an overruling of *Chess* is a concern that the evidence against defendant is overwhelming and the State does not want us to reverse the conviction. But such a result-oriented approach is not a legitimate basis for overruling a prior decision of this court. Reversals are part of the price we pay for having a system of law, rather than a system of ad hoc results. If the evidence is so strong, there is no reason to think that if the defendant is tried again, the same result would not be reached.

¶ 11 Associate Chief Justice DURHAM concurs in Justice ZIMMERMAN's concurring opinion.

DURHAM, Associate Chief Justice, concurring in the result:

¶ 12 I concur in the result reached by the majority because I believe that the rule announced in *Chess v. Smith,* 617 P.2d 341 (Utah 1980), is fundamentally sound.[1] However, in light of the State's argument that we must overrule *Chess* because it conflicts with the controlling United States Supreme Court interpretation of the federal right to due process, I believe this court should clarify the grounds upon which the rule announced in *Chess* is based. To this end, I would disclaim any reliance on federal due process jurisprudence, and would instead announce, pursuant to our supervisory power, a state rule consistent with *Chess v. Smith,* 617 P.2d 341 (Utah 1980).

¶ 13 This court's supervisory power is an inherent power which has been recognized in many cases. *See, e.g., State v. Arguelles,* 921 P.2d 439, 442 (Utah 1996) (noting, in ineffective assistance of counsel case, that "pursuant to our inherent supervisory power over the courts, we may presume prejudice in circumstances where it is unnecessary and ill-advised to pursue a case-by-case inquiry to weigh actual prejudice" (internal citations and quotation omitted)); *State v. Gordon,* 913 P.2d 350, 353 (Utah 1996) (noting, in ineffective assistance of counsel case, that court's inherent supervisory power over courts is well settled); *State v. Carter,* 888 P.2d 629, 650 (Utah 1995) (advising, pursuant to inherent supervisory power, that trial courts should be more conservative when making for-cause determinations regarding potential jurors in capital cases); *State v. Menzies,* 889 P.2d 393, 407 n. 7 (Utah 1994) (stating that language changes made in other cases to burden of proof instruction were undertaken pursuant to court's supervisory power over lower courts); *State v. Thurman,* 846 P.2d 1256, 1266, 1271–72 (Utah 1993) (observing that court has "inherent supervisory authority over all courts of this state" and invoking that authority to establish appropriate standards of review); *State v. Brown,* 853 P.2d 851, 857 (Utah 1992) (holding, pursuant to court's inherent supervisory power over courts, that "counsel with concurrent prosecutorial obligations may not be appointed to defend indigent persons"); *State v. Wareham,* 772 P.2d 960, 965 (Utah 1989) (adopting, pursuant to court's supervisory power, bifurcated hearing process in simple sexual abuse/aggravated sexual abuse cases); *State v. James,* 767 P.2d 549, 557 (Utah 1989) (adopting, through exercise of inherent supervisory power over trial courts, bifurcated hearing process to avoid possible prejudice to defendants in first degree murder trials when evidence of prior convictions is introduced); *In re Criminal Investigation, 7th District Court No. CS-1,* 754 P.2d 633, 653 (Utah 1988) (requiring, by inherent su-

---

1. In *Chess,* we held that "a trial judge should on his own initiative inquire of a defendant whether he wishes to waive his right not to appear in prison clothes so that the record affirmatively shows an intelligent and conscious waiver by the defendant if the defendant chooses to stand trial in prison clothes." *Chess,* 617 P.2d at 345.

pervisory power over judicial branch, that all investigations made under Subpoena Powers for Aid of Criminal Investigation and Grants of Immunity Act "must be fully documented and such documentation shall be maintained by the district court authorizing the investigation"); *State v. Bishop*, 753 P.2d 439, 499 (Utah 1988) (Zimmerman, J., concurring in the result) (observing that "requiring ... trials [to] proceed in the bifurcated fashion [when evidence of prior convictions will be introduced in first degree murder trials] is entirely within our inherent power to supervise the courts"), *overruled in part on other grounds by Menzies*, 889 P.2d at 397–98; *State v. Lafferty*, 749 P.2d 1239, 1260 (Utah 1988) (imposing, pursuant to court's inherent supervisory power, requirements of instructions and written findings on proof of aggravating circumstances in penalty phase of capital case); *State ex rel. Clatterbuck*, 700 P.2d 1076, 1081 (Utah 1985) (imposing, through exercise of inherent supervisory powers over trial courts, requirement of detailed findings and reasons for certifying juveniles to stand trial as adults). As recently noted, " 'It is especially appropriate that we exercise that supervisory power to require certain procedures when fundamental values are threatened by other modes of proceeding.' " *James*, 767 P.2d at 557 (quoting *Bishop*, 753 P.2d at 499 (Zimmerman, J., concurring)).

¶ 14 The question before us here concerns the procedure through which a defendant's right not to appear at trial in prison clothing should be protected. Both the United States Supreme Court and this court have recognized this right as fundamental. *See Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (stating that "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes"); *Chess*, 617 P.2d at 344–45 (noting several times that defendant's right not to appear at trial in prison clothes is a fundamental right or a basic constitutional right). Therefore, it is entirely appropriate for this court to exercise its inherent supervisory power to require certain procedures to protect a defendant's fundamental right not to appear at trial in prison clothes.

¶ 15 As mentioned previously, the procedure currently in place to protect a defendant's right not to appear at trial in prison clothes was announced nineteen years ago by this court in *Chess*, which held that "[i]n a matter of such fundamental importance to the basic fairness of a trial, we hold a trial judge should on his own initiative inquire of a defendant whether he wishes to waive his right not to appear in prison clothes." 617 P.2d at 345 (footnote omitted). The opinion reflected our concern that two fundamental principles of our justice system might be impaired if a defendant appeared at trial in prison clothes. *See id.* at 344–45.

¶ 16 First, the court was concerned that a defendant may be presumed by the jury to be guilty merely because the defendant appeared at trial in prison clothes, a result that undermines the fundamental principle that all persons are presumed innocent until proven guilty. *See id.* To support its concern that defendants may be presumed guilty because they appeared at trial in prison clothes, this court quoted *Estelle*, with approval, noting:

> "Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system.... This is a recognition that the *constant reminder of the accused's condition* implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that ... an unacceptable risk is presented of impermissible factors coming into play."

*Chess*, 617 P.2d at 345 (quoting *Estelle*, 425 U.S. at 504–05, 96 S.Ct. 1691).

¶ 17 Second, the court was concerned that juries might base their verdicts on prejudice if the defendant appeared at trial in prison clothes, an outcome directly contradicting the fundamental principle "that cases should be decided on the facts, and not on prejudice, by whatever means the prejudice may insinuate itself." *Id.* In discussing this fundamental principle, *Chess* stated that "[a] decent respect for basic fairness and the indignity of

appearing in a court of law in clothes which mark a defendant, who has not been convicted, as a lawbreaker would suggest" that "the occurrence of a defendant ... standing trial before a jury in prison clothes should long ago have ceased." *Id.* "Indeed, we have numerous rules of evidence that prohibit the introduction of defendant's past criminal conduct solely to assure that a case will be decided on the facts untainted by past misconduct.... The potential effect on the minds of jurors in attempting to apply the presumption of innocence and the standards requiring proof beyond reasonable doubt to the evidence in a criminal case, require" that cases be decided on facts, not on prejudice. *Id.*

¶ 18 Finally, we concluded in *Chess* that "[t]he prejudicial effect that flows from a defendant's appearing before a jury in identifiable prison garb is not measurable, and it is so potentially prejudicial as to create a substantial risk of fundamental unfairness in a criminal trial." *Id.* at 344. Thus, to avoid the risk of fundamental unfairness in criminal trials evidenced by the possibilities that defendants may be presumed guilty and verdicts may be based upon prejudice, we held that trial courts should inquire of defendants appearing at trial in prison clothes whether they have intelligently and consciously waived their right not to so appear. *See id.* at 345. The State now asks us to change our minds and our rule.

¶ 19 In particular, the State argues that this court should overturn *Chess* and should instead follow federal procedure, requiring defendants to invoke their right not to appear at trial in prison clothes. Under this procedure, defendants would be required to object (through counsel or personally if counsel fails to raise the point) to trial appearances in prison clothes. Only after defendants have raised an objection would the trial court incur an obligation to secure the defendant's right. I am not persuaded that trial courts should have no duty to regulate such an obvious aberration in fair trial procedure. Trial judges are well accustomed to overseeing what goes on in their courtrooms. Any trial judge seeing a defendant brought in wearing prison clothes will immediately be alerted to a problem and will wonder why the circumstance has occurred. It is no significant burden to require that a brief inquiry be made when such an inquiry will resolve all issues with no prejudice to defendants' trial rights.

¶ 20 Therefore, like the majority, I reject the State's suggestion that we overrule *Chess.* Doing so would unnecessarily impinge upon a defendant's right not to appear at trial in prison clothes.

¶ 21 Moreover, I believe that we should use this opportunity to clarify the authority upon which this court bases its protection of a defendant's right not to appear at trial in prison clothes. Specifically, it should be clear that the rule protecting a defendant's right not to so appear is premised on our supervisory power, and not tied to federal due process requirements. I would add the observation that this rule is supported by practice and logic. It merely maintains the status quo. Utah's trial courts have been charged with the duty to protect a defendant's right not to appear at trial in prison clothes since this court decided *Chess* in 1980. At no time has it been brought to the attention of this court that this rule has resulted in any burden or problems for the trial courts or the parties. Because the procedure announced in *Chess* has been implemented without any cognizable burden or problem, I agree with the majority that we should not abandon it.

¶ 22 Moreover, as mentioned earlier, this court strongly desires to insure that defendants are presumed innocent until proven guilty and that cases are decided on the facts, not on prejudice. To further these aims, we have adopted many rules of evidence to insure that indicia of guilt are not admitted or present without the defendant's consent during trial. *See, e.g.,* Utah R. Evid. 404, 408, 410, 609. As is well understood, the wearing of prison clothes by a defendant during trial is highly suggestive of guilt to some observers. No defendant should incur that risk absent an informed and conscious choice.

¶ 23 Finally, and most importantly, the rule we have followed for nineteen years contributes effectively to the goal of a fair

trial. Requiring the trial judge to inquire whether a defendant has intelligently and consciously waived the right not to appear at trial in prison clothing provides *automatic* procedural protection for the right. In contrast, under the procedure advocated by the State, defendants are not afforded automatic protection of their right not to appear at trial in prison clothes, but must themselves shoulder the burden of triggering that protection. Considering the fundamental nature of the right and principles at issue, it is far more sound to provide automatic, rather than contingent, procedural protection, particularly where it is so easily accomplished. This rule, of course, does not mean that a defendant may never appear at trial in prison clothes. Clearly, defendants may choose to so appear for strategic reasons, and may therefore choose to waive their rights. But it should be up to the trial judge, when presented with a defendant in prison clothes, to inquire whether the defendant has in fact chosen to so appear.

¶ 24 In conclusion, although I concur in the result reached by the majority, I think it is important to emphasize that this is a state rule based on our inherent supervisory authority.

ANDERSON, District Judge, dissenting:

¶ 25 I dissent.

¶ 26 In 1980, a 3–2 majority of this court, in *Chess v. Smith*,[1] reversed the conviction of a defendant who had been tried in jail clothing even though he had objected to his attorney but his attorney had failed to convey that objection to the court. I have no quarrel with the outcome of *Chess*. It seems clearly required by applying *Strickland v. Washington*,[2] which guarantees effective assistance of counsel, to *Estelle v. Williams*,[3] which entitles a defendant to trial in street clothing if desired. Indeed, the majority began its analysis in *Chess* by pointing out that failure of counsel to object could constitute ineffective assistance.[4]

¶ 27 Apparently believing that *Estelle* and its Utah corollary, *Gentry v. Smith*,[5] would require affirming the conviction, the *Chess* majority overruled *Gentry*. In the process, the majority stated that prejudice to the defendant was the vice to be avoided.[6] This is the reasoning supporting the outcome in *Chess*. The actual holding of *Chess* went beyond what the reasoning supported, and adopted a rule mandating reversal in every case where a defendant stands trial in jail clothing, unless an on-the-record inquiry shows an intelligent and conscious decision to stand trial in jail clothing. The majority compared this requirement to that imposed in the acceptance of guilty pleas and the approval of a waiver of counsel.[7]

¶ 28 This extension of *Estelle* has not been adopted by the United States Supreme Court or by any of our sister states. Notice of this unique requirement has not been given to trial courts by including it in the Utah Rules of Criminal Procedure, as has been done with the taking of guilty pleas and the approval of waivers of counsel.[8] I believe the result is that, although virtually every trial judge knows that defendants have the right to trial in street clothes, virtually no trial judge knows that an on-the-record inquiry must establish a conscious and intelligent decision to waive this right.[9] In a case where a defendant is charged with escape or assault

1. 617 P.2d 341 (Utah 1980).

2. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland*, of course, had not yet been decided in 1980, but the right to effective assistance of counsel was well established in Utah, having been most recently reaffirmed in *State v. Gray*, 601 P.2d 918 (Utah 1979).

3. 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

4. 617 P.2d at 344 n. 1.

5. 600 P.2d 1007 (Utah 1979).

6. 617 P.2d at 345 n. 2.

7. 617 P.2d at 345.

8. Utah R.Crim. P. 11.

9. I base my belief on my own experience, on the fact that this rule is not mentioned in the *Trial Court Bench Book* produced by the Education Division of the Administrative Office of the Courts, and on the absence of any annotation to *Chess* in the Utah Rules of Criminal Procedure. The rule is mentioned only in annotations to section 77–1–6, Utah Code Ann. (1999), and to article I, sections 7 and 12 of the Utah Constitution.

by a prisoner and the defendant asserts that he fought or escaped in order to avoid physical or sexual assault by another inmate, it would be obvious to the trial court, the prosecutor, and defense counsel not only that the defendant is not prejudiced by trial in jail clothing, but that presenting himself as an inmate is an essential part of the defense. Even so, if the trial court is unaware of the unique holding of *Chess,* now hardened in this case, that defendant has ironclad appeal insurance.

¶ 29 The principle of stare decisis requires more than disagreement with precedent. The rule announced in *Chess* departs from federal precedent and has not, as far as I can determine, been adopted by any other state. The rule sweeps more broadly than necessary to decide *Chess* and extends beyond the logical basis articulated for it. In adopting the rule, the court did not expressly assert its authority to either interpret the Utah Constitution or supervise the lower courts. The rule has not been included in the Utah Rules of Criminal Procedure or the annotations thereto, and I believe it is virtually unknown to trial judges. It has not been cited in any other case and, in nineteen years, has affected the outcome of only this case. Here, it operates to force defendant's family members, if they can be found after nine years, to relive and recount his reign of terror or defendant will go free.

¶ 30 I believe that a rule that is so poorly known, differs so radically from other precedent, and has had such little effect, but such a dramatic effect on one family, is a prime candidate for elimination. If this court is unwilling to eliminate it, perhaps it will illuminate it by adding it to rule 17 of the Utah Rules of Criminal Procedure.

¶ 31 I would overrule *Chess* to the extent that it purports to require more than a showing of prejudice. I would then examine whether Bennett was actually prejudiced by standing trial in jail clothing.

¶ 32 Having disqualified himself, Justice Stewart did not participate herein; District Judge Lyle R. Anderson sat.